MOLLIE K. DOUGAN v. NANNIE C. BEMIS and Another.[1]

June 16, 1905.

Nos. 14,350—(144).

**Resulting Trust:**

Action to charge one of the defendants as trustee of the legal title to certain land for the plaintiff, and to compel a conveyance thereof to her. The trial court made findings of fact, and as a conclusion of law directed judgment for the plaintiff as prayed. *Held*:

1. If an agent to purchase land for another with money furnished by him takes the title thereto in his own name, without the assent of his principal, he will hold the legal title as trustee for his principal.

2. If, however, the agent buys with his own money, and the principal advances no part of the purchase price, and the right of the principal rests upon a verbal agreement, which is denied, no resulting trust can arise, and the case falls within the statute of frauds.

3. The findings of fact herein do not justify the conclusions of law.

Appeal by defendants from an order of the district court for Hennepin county, Simpson, J., denying a motion for a new trial, after a trial before Pond, J., and findings in favor of plaintiff. Reversed.

*Durment & Moore,* for appellants.

*Dodge & Webber,* for respondent.

START, C. J.

Action to charge the defendant Mrs. Nannie C. Bemis as trustee of the legal title to the land described in the complaint for the plaintiff, and to compel a conveyance thereof to her. The cause was tried by the court without a jury, and findings of fact made, and as conclusions of law based thereon the court directed judgment in favor of the plaintiff for the relief prayed. The defendants appealed from an order denying their motion for a new trial.

The here material facts found by the trial court briefly stated, are substantially these:

1. The plaintiff during all the times stated was and is the owner and occupied as a residence lot 26, Minnetonka Beach, according to

[1] Reported in 103 N. W. 882.

the plat thereof. The defendant Mrs. Bemis owned and occupied with her husband and codefendant lot 24 in the same plat. Lot 25, lying between the respective lots of the parties hereto, was and is unoccupied and was owned by a third party until purchased by the defendant Mrs. Bemis. The acquirement of that part of lot 25 adjoining the plaintiff's lot was a matter of special and peculiar benefit to her, and the acquirement of the other part thereof by the defendant Mrs. Bemis was of like benefit to her; but the owner of the lot would not sell it in parcels, which the respective parties understood.

2. In September, 1904, the plaintiff and the defendant Mrs. Bemis had negotiations and discussions each with the other, in relation to the purchase by them, for their mutual benefit, of lot 25, for the purpose of specially benefitting their respective lots, and with a view of preventing the erection thereon of another dwelling house, and for this purpose mutually agreed that they would purchase the lot, each a one-half part thereof.

3. That to this end plaintiff on such occasions duly authorized and directed the defendant Mrs. Bemis to enter into negotiations with the owner of the lot for the purpose of purchasing it for their mutual benefit, and in pursuance of such authority and understanding she did enter into such negotiations.

4. Thereafter, in pursuance of such negotiations and authority, a purchase of the lot was concluded between Mrs. Bemis and the owner thereof, and the owner sold and conveyed it to Mrs. Bemis for the sum of $1,000 paid by her therefor. Such purchase of the lot was made for the mutual benefit of both parties, in pursuance of such understanding between them.

5. The plaintiff, having received notice of such purchase, notified the defendant Mrs. Bemis that the terms of the purchase were satisfactory, and that she was ready to pay one-half of the purchase price on receiving a deed for one-half of the lot next to her own.

6. Thereupon Mrs. Bemis recognized the agreement in respect to the purchase of the lot, and admitted that the purchase was made for the mutual benefit of herself and plaintiff, and entered into further negotiations with the plaintiff with a view of retaining for herself a larger portion of the lot than one-half.

7. The parties failing to come to any further agreement or under-standing with reference to the lot, the defendant repudiated all obligations to convey one-half of the lot to the plaintiff, and claimed that she purchased it in her own behalf for her exclusive benefit. All allegations of the answer not herein found to be true are untrue.

The defendants here urge, with other assignments of error, that the findings of fact which we have for convenience numbered 2, 3, 4, 5, 6, are not sustained by the evidence, and that the conclusion of law is not justified by the facts found. Findings of fact numbered 4 and 6, respectively, are clearly unsupported by the evidence. The admissions in the pleadings and the undisputed evidence show that the purchase of the lot and the conveyance thereof to Mrs. Bemis were not in pursuance of any negotiations or understanding between the parties hereto, or that she recognized the alleged agreement after the lot was deeded to her. The evidence does show that Mrs. Bemis, by her husband as her agent, had some negotiations with the agent for the sale of the lot with reference to its purchase after the alleged under-standing with the plaintiff. But before they were consummated, and before the defendant had an enforceable contract for the purchase of the lot, the parties met in the office of the agent, who was also present, when a controversy between them arose as to a division of the lot; that the result was that an understanding was reached as to the division of the lot on condition that the plaintiff should deed to the defendant Mrs. Bemis a part of another lot owned by plaintiff; and, further, that the plaintiff refused to abide by the condition, and there-after a deed of the lot was made to Mrs. Bemis by the owner thereof.

It is not entirely clear whether findings of fact 4 and 6 are essential to support the trial court's conclusion of law that the defendant Mrs. Bemis holds the title to one-half of the lot in trust for the plaintiff. It is, however, unnecessary to decide the question, for we are of the opinion that, if the facts be accepted as found by the trial court, they do not justify its conclusion of law. The evidence is conclusive that the negotiations and agreements between the parties whereby Mrs. Bemis was authorized and agreed to act as agent for the plaintiff in purchasing the lot for their mutual benefit were not in writing, but were wholly oral, as alleged in the answer, except a preliminary letter, written some eighteen months before any arrangement between the par-

ties, by one of the defendants to the mother of the plaintiff, who was then a part owner of the plaintiff's lot, suggesting the purchase of one-half of the lot by each of the respective parties. The findings of fact are a little obscure, in view of the concluding lines thereof, as to whether the negotiations and agreements therein stated were in writing or not; but from the language actually used in the findings, and the undisputed fact that the negotiations were oral, the findings must be construed in accordance with the fact that the understanding of the parties in the premises rested in parol.

The claim of the plaintiff is that the understanding or agreement between the parties with reference to the purchase of the lot created a relation of trust and confidence, and that the purchase of the lot under the circumstances disclosed was a breach of such trust. The most favorable inference for the plaintiff to be drawn from the facts found is that the relation of principal and agent existed between the parties, whereby the defendant Mrs. Bemis agreed, as agent of the plaintiff, to purchase for her one-half of the lot; and that the defendant, in violation of such agency, secured a conveyance of the whole of the lot for her own use, and refused to convey any portion thereof to the defendant. In this connection it is to be noted that the agent received no money from the principal on account of the proposed purchase, and that the agent paid her own money for the lot; that prior to such purchase none of the parties hereto had any right to or interest in the lot in question; that neither of them had any such rights to surrender; and, further (if material) that there is no finding that the plaintiff waived and lost the opportunity to treat for and negotiate a purchase of the lot on her own account by any act of the defendant. The question, then, in its last analysis, is whether, from these facts, a trust resulted in favor of the plaintiff in the half of the lot which equity will enforce.

The rule of law applicable to this question is well settled upon principle and authority. It is this: If an agent to purchase real estate for another with money furnished by him takes title thereto in his own name without the assent of his principal, he will hold the legal title as trustee for his principal. But if the agent in such a case buys with his own money, and the principal advances no part of the purchase price, and the rights of the principal rest upon a verbal agreement, which is denied, no resulting trust will arise, and the case will fall

within the statute of frauds.   G. S. 1894, §§ 4213, 4274, 4279, 4282; 2
.Story,. Eq. Jur. § 1201a; 1 Pomeroy, Eq. Jur. § 422; 1 Perry, Trusts,
.§ 135; Bispham, Eq. § 80, p. 132; Sugden, Vend. 438; 1 Cyc. 1083.

This rule is supported by the great weight of judicial decisions, but
not by all, for there are well-considered decisions which hold that the
purchase of land by an agent for himself, even with his own money,
which he has agreed to buy for his principal, is such a fraud upon the
principal as will raise a resulting trust in his favor.  A leading case
in this class is Rose v. Hayden, 35 Kan. 106, 10 Pac. 554.   The distinc-
tion between the cases where the agent uses the money of his principal
in the purchase of the land and cases where the agent uses his own
money and purchases land for himself which he has orally agreed
to purchase as agent for his principal is fundamental.  In the first
class the trust does not arise from any agreement of the parties, but
purely by implication of law from the fact of the wrongful use of
the money of the principal.  The statute of frauds can have no ap-
plication to such cases.  In the second class a trust would arise, if
at all, by the express verbal agreement of the parties, which would
be within the statute of frauds.  We therefore hold that the findings
of fact of the trial court do not justify its conclusions of law.

Order reversed and a new trial granted.

LEWIS, J.

I concur in the conclusion that there should be a new trial, but do
not wish to be understood as holding that the evidence would not
justify a finding that appellant was a trustee ex maleficio.