## BENJAMIN v. CHANDLER.

(District Court, M. D. Pennsylvania. December 15, 1905.)

### No. 3.

1. BANKRUPTCY—SUIT TO RECOVERY PREFERENCE—PROOF OF INSOLVENCY.

Evidence considered, and *held* to sustain a finding by a jury that a bankrupt was insolvent at the time of the making of a payment to a creditor claimed to constitute a preference.

2. SAME—PREFERENTIAL PAYMENT—JUDGMENT LIEN.

Under Bankr. Act July 1, 1898, c. 541, § 60a, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], as amended by Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 [U. S. Comp. St. Supp. 1905, p. 689]. a preference is given wherever, within four months prior to bankruptcy of the debtor, a lien is secured on his real estate by a creditor by virtue of a judgment entered against him by confession or otherwise, which enables the creditor to get out of the property in any manner more than he would have done had he remained a general creditor, and it is immaterial that the debtor himself did not pay it.

3. SAME.

A bankrupt, within four months prior to his bankruptcy, contracted to sell certain real estate and to give a clear title thereto. The property was incumbered by liens which the purchaser undertook to pay out of the purchase money, but before such payments were completed or the property was conveyed defendant, who held judgment notes of the bankrupt, entered a judgment thereon, thereby obtaining a lien on the property which the purchaser paid in order to clear the title, although the payment, together with those made to remove the prior liens, exceeded the purchase price of the property. *Held*, that such payment to defendant constituted a voidable preference to the full amount received, having been obtained from property of the bankrupt through the means of the judgment lien.

4. SAME—KNOWLEDGE OF INSOLVENCY.

Defendant, who held judgment notes, received a circular letter advising him that the debtor was in failing circumstances and desired to effect a compromise with his creditors, and defendant thereupon entered judgment on his notes, and, by reason of the lien thus acquired on the debtor's realty, obtained payment of his debt in full. The debtor was shortly thereafter adjudged bankrupt. *Held*, that the circular was sufficient to give defendant reasonable cause to believe the debtor to be insolvent, and to render the payment he obtained a voidable preference.

5. SAME—INTEREST.

Where a preference has been secured by the payment of money, interest only runs in favor of the trustee from the time demand is made on the creditor for its return.

At Law. On rule for new trial.

Russell Dimmick and John F. Scragg, for the rule.

R. L. Levy and Houck & Benjamin, opposed.

ARCHBALD, District Judge. This is an action·by a trustee in bankruptcy to recover a preference, and the verdict was in favor of the plaintiff for $578.88. Admittedly this is some $11 too much; the amount actually received by the defendant being $539.40, on which interest became due only from the time demand was made for it (Tredway v. Kaufman 21 Pa. Super. Ct. 256; Kaufman v. Tredway, 195 U. S. 271, 25 Sup. Ct. 33, 49 L. Ed. 190), which was not till December 13, 1904, thus making $567.10. It is agreed that all over and above this sum shall be remitted. But the defendant, not content with that, denies any liability whatever, and asks for a new trial, accordingly, upon several grounds.

One of the main points in controversy at the trial was the bankrupt's insolvency at the time of the alleged preference. His bankruptcy almost immediately followed, and it is a question whether this of itself was not evidence of his antecedent insolvent condition. Hackney v. Hargreaves, 13 Am. Bankr. Rep. 164, 99 N. W. 675; Cincinnati Cooperage Co. v. Gaul, 170 Pa. 540, 32 Atl. 1093. But, without resting the case upon that, there were other considerations upon which it was properly submitted to the jury. The indebtedness of the bankrupt all told, secured and unsecured, was between $5,000 and $6,000; and his assets, nominally, considerably more than that; but in reality, as shown by the evidence and as found by the verdict, materially less. His real estate, of which there were two pieces, was worth, the one about $2,800, and the other somewhere from $1,000 to $1,300, both heavily incumbered. He was carrying on a small grocery store, but his stock of goods was reduced to very meager proportions, and was worth at the most, with the horses and wagons employed in the business, not more than $500 or $600. ·The only things else he had were his book accounts, having a face value of $4,400, and two life insurance policies of $2,000 each, one in the Heptasophs and the other in the Woodmen, both well known beneficial and protective orders. It is these last two items that are made the subject of contest here. The book accounts apparently raise the assets above the liabilities, and the surrender value of the policies was not shown. But the accounts were stale, and however much they amounted to numerically, the trustee, with the aid of others, was only able to collect some $66 out of them, and that may be accepted as all that they were practically worth. It may be that time and persistence would have succeeded in realizing more; but they manifestly were not available to any extent to the bankrupt, who was in a position to make the most out of them; and, as was pointed out in Re Coddington, 9 Am. Bankr. Rep. 243, 118 Fed. 281, it is the value of such assets as they stand that is to be taken, in balancing them up with the liabilities, on·the issue of insolvency; and it is plain that there was nothing of·substance to them here. The jury have so found, on the question being submitted to them, and their verdict is not to be disturbed.

Neither am I persuaded that any mistake was made with regard to the life insurance policies which have been spoken of. All, at most, that could have been realized from that source, was the surrender value, if they had any, and whether they had depended upon a·num-

ber of circumstances, and was not a necessary incident, and was not therefore to be presumed. This is particularly true with regard to insurance by virtue of membership in a beneficial order, the right to which is conditioned upon the good standing of the party, and its payment met by assessments upon surviving members. All we have on the subject in the present instance is the statement by the bankrupt, drawn out on cross-examination, that he had $4,000 of insurance of this character, without any particulars, as to when it was taken out, in what condition it stood, or to whom or upon what terms it was payable. It is idle upon any such showing to contend that it represented anything of value, to be reckoned with in an estimate of the bankrupt's financial condition, or that the trustee was required to prove, as a negative, that it did not.

With more show of reason, it is claimed that the payment to the defendant which is claimed as a preference was the independent and voluntary act of a third party, and not of the bankrupt, out of which no preference could grow. The facts with regard to this are as follows: On June 1, 1903, the bankrupt being indebted to the defendant gave him five promissory notes with confessions of judgment, for $100 each, payable in three, four, five, six, and seven months. The first two of these were taken care of as they came due; but not so the others, which a year or more later still remained in the defendant's hands unpaid. On September 24, 1904, having received a circular letter from Mr. Levy, the bankrupt's attorney, saying that he (the bankrupt) was in financial difficulty and was compelled to offer a compromise to his creditors, the defendant entered up judgment on his confession, in the court of common pleas of Lackawanna county, Pa., for the face of the notes with interest, amounting to $539.40. As already noted, the bankrupt just prior to this had had two pieces of real estate, one of which he had conveyed away two days previous to one Peter Maher for the recited consideration of $1,300. This was afterwards decided to be a fraud and recovered back by the trustee, but we do not need to concern ourselves with it here. The bankrupt had also agreed to sell the other piece to another party, one Gomer Jones, for $2,800, on an option to that effect given him some time in August, and a deed dated September 1st had been made out for it, but had not been accepted or put on record. Submitting the matter to his attorney for examination, it was found by the purchaser that the property was covered with liens, which it would be necessary to pay off in order to secure a clear title; and this, through his attorney, he thereupon proceeded to do, out of the purchase money, after notice to the bankrupt of this intention. The first lien was a mortgage July 13, 1903, for $1,847.71; the next was a judgment August 5, 1903, for $114.71; the next was another judgment August 10, 1903, for $438; there was a further judgment September 20, 1904, for $200; and then came the judgment of the defendant as already mentioned. It will be noted from this recital that $2,600.42 was required to pay off the preceding incumbrances before reaching that of the defendant, which thus left but $199.58 of the $2,800 purchase money to apply upon it. Not stopping at this, however, the whole of the judgment—debt, interest,

and costs—was paid by the purchaser, as was of course necessary to get an unincumbered title, thus running up the cost of the property to considerably over $3,100. Payment to the defendant was made October 3, 1904, and the bankrupt filed his petition October 13th following, which thus brought the transaction within the four months period. But the payment to the defendant having been made in the way stated, two positions are taken with regard to it: First, that, inasmuch as it was not made by the bankrupt, but by the purchaser of the property, it was not the act of the bankrupt and so not a preference; and, second, that, if this be not so, it clearly was not such, as to all over and above the $2,800 which was agreed to be given for the property. Neither of these views in my judgment can be sustained.

By section 60a of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]):

"A person shall be deemed to have given a preference if being insolvent he has within four months before the filing of the petition * * * procured or suffered a judgment to be entered against himself in favor of any person, * * * and the effect of the enforcement of such judgment * * * will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

This is fulfilled, and a preference such as is so prohibited is shown, wherever, as here, a lien is secured on real estate of the bankrupt, by virtue of a judgment entered up against him by confession or otherwise, the result of which enables the party in whose favor it is to get out of the property of the bankrupt more than he would have done had he remained a general, instead of becoming a secured, creditor. It does not matter that the bankrupt does not himself pay it. That is not to be expected from a failing debtor, and might never in consequence be realized. Neither does execution have to be issued. The lien obtained by virtue of the judgment, whereby payment is secured out of the property, is a sufficient enforcement of it within the meaning of the law. Neither does it change the character of the transaction that payment is made by a purchaser from the bankrupt who appropriates the price he was to pay in clearing off the liens, in order to have an unincumbered title. The significant thing is that, by virtue of the judgment which was given him for his debt, the creditor is paid out of the property of the bankrupt, while others not so favored have to wait. There can be no question that, if this was effected through the medium of a sheriff's sale, it would amount to a preference, and there is no essential difference that the sale is private. Otherwise, by a mere disposition of his property to a third party, after covering it with judgments, a failing debtor could prefer and make them all good. The law permits no such evasion of its terms. The payment of a judgment, secured in this way, is as much an enforcement of it as if execution issued and levy were made. By whomever paid, it comes out of the property of the bankrupt against which it is a lien, and that is enough.

It is said, however, that according to the bargain with the purchaser the price of the property was to be $2,800, and that all over

and above this was clearly voluntary, limiting a recovery at most to $199.58 with interest, instead of $539.40. But although that was the bargain, it was not consummated until after the defendant had entered up his judgment, and secured a lien which the purchaser, in order to get a clear title, was compelled to pay. It is not as though title to the property had been obtained in advance of this, leaving nothing but the purchase money on which the judgment could become a lien. The defendant controlled the situation, and, if the purchaser held onto the property, he was bound to take care of him, or face the possibility of an execution, which he evidently preferred not to do. This may have carried the price beyond what he bargained for, but the property seems to have been worth it, and he did not hesitate. The defendant was thus enabled to obtain out of the property of the bankrupt, on the eve of his bankruptcy, by means of the judgment given him, payment of his debt in full, and he must return it in consequence to the trustee.

There are other reasons suggested for a new trial, but this is all that seems to require notice, except the complaint with regard to the refusal of the defendant's second point. The court was there asked to charge that:

"It is not enough that the creditor has some cause to suspect the insolvency of his debtor; but he must have such knowledge of facts as to induce a reasonable belief of the debtor's insolvency."

But even if the point as so framed was technically correct, its refusal did the defendant no harm. Notice of the bankrupt's failing condition was conveyed by the circular letter which was issued to the creditors under the advice of counsel in the effort to effect a compromise; and this by the admission of the defendant was received by him prior to the entry of his judgment, being in fact the cause of it; after which there could be no question as to whether he acted with knowledge. If not direct proof of insolvency, as held in Re Lange, 3 Am. Bankr. Rep. 231, 97 Fed. 197, it at least put the defendant on inquiry, and the acceptance of a preference in the face of it was at his peril.

The rule for a new trial is discharged, on condition that the plaintiff, within 10 days, by paper filed remit all of the verdict above $567.10.