# FLORENCE M. SMITH AND OTHERS v. JOHN S. TOLVERSEN.[1]

January 5, 1934.

No. 29,440.

[1]Reported in 252 N. W. 423.

A. R. *English* and *Doherty, Rumble, Bunn & Butler,* for appellant.

*James G. Mott* and *E. H. Nicholas,* for respondents.

*STONE, Justice.*

Defendant appeals from an order denying his motion for amended findings or a new trial.

The action is one for an accounting against defendant as trustee of two trusts hereinafter mentioned. It was referred to Milo J. Meeker, Esq., of the Pipestone county bar, to take and report the evidence with findings of fact. His report was adopted by the court, and his findings made the basis of conclusions of law and order for judgment adverse to defendant.

Julius A. Smith died testate in Murray county in 1909. Defendant was the executor of his will. The residue of the estate was

divided between two testamentary trusts, of which defendant became trustee. One was for the benefit during her life of Florence M. Smith, the widow, with remainder to the six children of herself and the testator. The other trust was for the benefit of the children, all of whom are still living. One-sixth of the income was to be paid to each child or his guardian until he reached the age of 25, when one-sixth of the principal was to be paid over to him. The youngest child was 25 years old in 1921. As to each trust the trustee was given power by the will to sell real estate and personalty and to invest and reinvest the proceeds, "either in other real estate or such good and safe securities as he may deem best for the interests of the said estate."

Defendant's trusteeship dates from the entry of the final decree of distribution of the estate of Julius A. Smith, June 21, 1910. Following the example of counsel, we shall refer to the trust for the benefit of the widow as the "F. M. Smith trust" and to the other as the "children's trust." The property embraced by the former, in addition to the homestead of the deceased and its contents, consisted at the outset of promissory notes and other securities aggregating $34,000. The property of the children's was of the original apparent value of $49,000 in round numbers. Defendant's administration of both trusts continued until the time of the trial. The accounting covered the period ending May 5, 1931.

Among other things, the referee reported to the court concerning defendant that:

"He was extremely evasive in answering questions put to him. Having had the many years of experience that the defendant has had as a banker and with full knowledge of what constituted good management, proper bookkeeping and accounting, the court was led to believe that many records that would have explained numerous situations arising by reason of the trust, could have been explained had the defendant seen fit to produce these records. We were forced to rely entirely on evidence dug out under cross-examination or upon the books and records obtained under a court order from the receiver of the First National Bank. The attitude of the

defendant while on the witness stand was overbearing and evidenced an intention on his part to withhold information and to hide the truth from the court."

The net result of the decision below, aside from the removal of defendant as trustee, was to surcharge his account in the "F. M. Smith trust" in the sum of $35,428.93, and in the "children's trust" in the sum of $39,865.65, the total being $75,294.58.

Before going further with the facts, it is well to repeat as premise of decision that "a trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive," is the standard of his behavior. That rule "is unbending and inveterate." Meinhard v. Salmon, 249 N. Y. 458, 464, 164 N. E. 545, 546, 62 A. L. R. 1. So far there is no debate between counsel.

■ The rigidity of that standard, which had its origin with, and owes its enforcement to, the ethical ideals of lawyers and judges rather than those of business, has as corollary that a trustee is forbidden to purchase trust property for himself or to sell his own property to the trust. He is simply not permitted to unite the opposite characters of buyer and seller. St. Paul Trust Co. v. Strong, 85 Minn. 1, 88 N. W. 256; Ottawa B. & T. Co. v. Crookston State Bank, 185 Minn. 22, 239 N. W. 666; 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 9934.

This defendant, as trustee of the Smith trusts, was authorized expressly to invest in "good and safe securities." We need not follow counsel in their argument of the limitations upon a trustee so empowered. Defendant is charged primarily, not because of what he bought or sold, but because, as trustee, he bought from and sold to himself, or tried to. That being the case, his liability follows, not because of character of things purchased or sold, but because the manner of purchase or sale was a violation of his primary duty not to allow his interest as an individual even the opportunity of conflict with his interest as trustee.

■ True, as argued for appellant, if a trustee buys trust property, for himself or sells his own to the trust, the transaction is not

414

void but voidable, and so subject to affirmance by the beneficiaries. The right of election is primarily with them; and, again, speaking generally and at large, no court or referee can make the election for them.

But this is an action for an accounting, with no background of affirmance or disaffirmance (or much opportunity, apparently, for either) by the beneficiaries. Being an action for an accounting, it has searched very properly and tested, as preliminary to the ultimate relief wanted by plaintiffs, defendant's performance of his trustee's duty to keep "clear, distinct, and accurate accounts." 2 Perry, Trusts, p. 1397, § 821. Not upon the beneficiaries, but upon the trustee, is the burden of proof that his actions conformed to the standard of his duty. Not theirs, but his, is the obligation "satisfactorily to explain." Minneapolis Trust Co. v. Menage, 73 Minn. 441, 448, 76 N. W. 195; Villa Site Co. v. Copeland, 91 N. J. Eq. 503, 111 A. 39, 13 A. L. R. 356. If, as appears conclusively, defendant's accounts are not clear and accurate; if they were negligently kept, leaving many transactions in the fog which must come of absence or ambiguity of records of old transactions, the consequent obscurity or doubt cannot operate to his advantage, but must be resolved against him. Blauvelt v. Ackerman, 23 N. J. Eq. 495. In re Gaston Trust, 35 N. J. Eq. 60. It follows, in the absence of earlier election to affirm or disaffirm by the beneficiaries or any of them, that they are entitled, under their general prayer therefor, to any relief which the evidence warrants. Without force, therefore, is the argument that some transactions now questioned cannot be resolved against defendant simply because the beneficiaries have taken no earlier action to affirm or disaffirm. All else aside, the argument does not suggest, and certainly the decision below does not establish, the possession by the beneficiaries of knowledge of, or such participation in, any of the questioned transactions as to put them, or any of them, to the duty of an election to affirm or disaffirm before commencing this action, the primary purpose of which was to compel the defendant to furnish information.

Going on with the facts, we consider next the assignments of error challenging the decision concerning the "F. M. Smith trust."

One has to do with so-called "Price notes" in the principal sum of $3,000. Part of the original assets of the trust, they are found to have been well secured and collectible. Defendant's dealings with them were seemingly more in the interest of a bank, now insolvent, of which he was the president, than in the interest of the trust. The result is that he has on hand an overmortgaged item of real estate. The decision charged him with the original amount of the notes but with nothing for interest. The argument is that he has either accounted for or is charged with the income on the real estate. So charging him, the property as result of the decision being his rather than that of the trust, was erroneous. But defendant is chargeable with interest on this item from the beginning. There is no suggestion that such a charge would be less than the actual income. Hence no prejudicial error appears.

■ March 1, 1916, defendant sold to himself 22 shares of the stock of a local corporation which was trust property. Later he sold the stock at considerable profit, with the net amount of which, including dividends received, he is charged. It is complained that this charge is excessive in that "the trust had use of the money paid by defendant as the purchase price of the stock," during a considerable period. Defendant having been given credit therefor and being charged only with his actual clandestine profit, he had no ground of complaint.

Concerning two misappropriations of cash aggregating $2,000, the proper determination depends so much upon facts that no further comment is necessary. The most that can be properly argued for defendant is that the evidence is equivocal. It has been considered and sustains the result. It is enough that neither defendant's records, nor his own testimony aided thereby, acquits him of the charge, which is based upon evidence and inferences making something more than a prima facie case.

■ Defendant is surcharged with another item of $750 and interest from March 2, 1921. On that day $1,750 of trust money was collected and credited to defendant personally in his own bank. He says that was a mistake. We so assume. But when later he discovered the error, instead of making it good by payment, he

claims to have transferred (the averment resting upon his own unsupported testimony) $1,000 worth of "telephone stock" and $500 in value of "Kinbrae Bank stock." Later he took back the telephone stock, replacing it with a $1,000 note which was collected. The unpaid balance then due the trust was $750. Complaint is made because defendant is not credited with $500 as a capital loss on account of the Kinbrae Bank stock. There has been such loss, and if defendant had purchased the stock properly, for the trust, instead of clandestinely transferring his own stock, there would be merit to the argument. But on the facts there is none. Taking his own view of it, defendant absorbed $1,750 of money belonging to the trust. He restored only $1,000 and so is properly charged with the remaining $750, with interest.

Complaint is made concerning an item of "American Royalty Petroleum Co. Stock." Fifty shares of the preferred stock of that company and 25 of its common stock were purchased by defendant with $600 of trust money. He took the certificates in his own name. Substantial dividends were collected for a time and paid into the trust. Defendant is given credit for those payments. He complains of a $72 interest charge on the item. It is inextricably interwoven with other actions of a similar character wherein defendant was obviously using trust funds to purchase stock which he either held, or was in a position to claim, as an individual. They were very properly considered his. He is given credit for all he paid the trust. No error appears in the $72 interest item with which he is charged.

May 4, 1925, defendant took from Florence M. Smith a note in the sum of $2,962.39 for what he claims was an overpayment to her of trust income. That claim is not substantiated by defendant's records. The answering argument, with adequate factual basis, is that defendant, through the determinative period had been handling the personal funds of Mrs. Smith, is indebted to her, and that this note and its validity are things with which the trust is not concerned. Defendant has his claim on the note for whatever it may be worth. The refusal below to give him credit for it has not been shown erroneous.

Certain real estate transactions are drawn in question. The most that can be said for defendant is that the dependent issues are of fact, and the decision below has not been shown erroneous. Defendant is under a double burden as to such issues. As trustee, the burden is on him to justify his doings. As appellant now, the burden is on him to show prejudicial error in the findings against him.

Going to the "children's trust," the first questioned item is a surcharge of $603. Defendant's only claim is that he was taken by surprise at the trial concerning the transaction and that he can now show that the charge is error. The answer is that his inexcusable malfeasance in not keeping proper records is so glaring that the court's refusal on the motion for a new trial to be moved by the argument of surprise cannot be considered such an abuse of discretion as to warrant a new trial. But if defendant can now show that the charge is wrong, the district court can still be depended on to give him the opportunity if he shows good cause.

■ One of the trust assets was a "Traverse County farm." Defendant is charged for its sale at $12,000, the consideration recited in the deed which he executed. He was unable to offer evidence of any other consideration. The recital over his signature is sufficient to sustain the resultant finding in the absence of evidence *contra*. In the motion for new trial was claim of newly discovered evidence as to this item. The real assertion is, not that defendant has procured such evidence, but, if given time, there is some prospect that he may find it. There was no abuse of discretion in denying a new trial on such mere prophecy of new evidence. If pending the appeal defendant has made good that prophecy and has procured credible evidence of the amount actually received for this farm, and it is less than $12,000, he may apply for leave to introduce that evidence and for whatever correction of decision may be rendered appropriate. Nothing in this opinion will prejudice defendant's claim in that respect or his right to benefit of the offer made in the brief for plaintiffs that if new evidence is forthcoming to the effect claimed for defendant, plaintiffs will "stipulate" either

before or after the entry of judgment that a corresponding reduction be made from the amount found due by the court.

Defendant's final complaint on the facts concerns an item of "Ireland lots" and the "Stella Johnson and Cora Holversen loans." It is enough that defendant as appellant has failed to show prejudicial error in the decision as far as it concerns these items. Here again he is prejudiced, perhaps fatally so, by the absence of records or other evidence sufficient to sustain his contentions.

Mrs. Johnson and Mrs. Holversen are beneficiaries of the trust. Whether they have been overpaid or underpaid is not now in issue. The question is as to the indebtedness of defendant to the trust. Defendant as appellant, we repeat, has failed to show in the ultimate decision of that question any error to his prejudice.

There is some argument questioning the manner in which interest has been computed. It does not appear that any such question was made by or under the motion for a new trial. If there be error in that respect, it will be corrected if brought to the attention of the trial court by proper motion. Doubtless counsel can settle the question without referring it to the court. Anyway they should do so.

Upon the going down of the remittitur, the district court will again have jurisdiction of the action, which will continue until the entry of final decree. The "F. M. Smith trust" has not yet come to an end. Defendant will be properly removed as trustee and his successor appointed. The whole process will be under the jurisdiction of the district court. It is not to be thought that defendant will not have proper opportunity, upon convincing showing (he cannot expect relief upon anything less), that, by reason of newly discovered and credible evidence, any substantial charge against him should be stricken from the account as it now stands against him. In so far as the present record discloses, he has made no showing of the kind a trustee must make in order to be relieved from the adverse results of which he now complains.

Preparatory to the trial plaintiffs employed a certified public accountant to audit and make report of defendant's transactions as trustee. The report, exhibit "G," was offered in evidence. Upon

objection, the court reserved its ruling, and none was made later. But all through the trial the exhibit was used as if in evidence. Without objection witnesses testified from it. Defendant admitted the accuracy of much of it. In that situation the report must be considered as having been properly in evidence. At best it was merely a secondary aid to the application and understanding of other and primary evidence. No statement in it, unaided by extraneous evidence, is the basis for any finding adverse to defendant. There was no error in its admission or such use as was made of it.

Order affirmed.

