# IN RE TRUST UNDER WILL OF HOVEY C. CLARKE.
## MAGGIE L. CLARKE v. MARGARET CLARKE BENNETT AND OTHERS.[1]

Nos. 31,899, 31,900.

March 3, 1939.

[1]Reported in 284 N. W. 876.

*Strong, Covell & Strong* and *Karl H. Covell,* for appellant.
*Doherty, Rumble, Butler, Sullivan & Mitchell,* for respondents.

STONE, JUSTICE.

This case is furnished by a testamentary trust, of which Mrs. Maggie L. Clarke is trustee. After trial below on her final accounting (she has resigned as trustee), she was surcharged in the sum of $34,740.35. Findings of fact, conclusions of law, and order for judgment were made. There is an appeal from that order, which is not appealable. Hence that appeal is dismissed. But there was also a motion for amended findings or a new trial. Mrs. Clarke's appeal from the order denying that motion properly presents the case for review.

Appellant is the widow of Hovey C. Clarke, late of Minneapolis, who died testate in 1931. By his will appellant was given enumerated personal effects and one-third of the residue of his estate. The other two-thirds went to her as trustee "to receive and collect the principal, income, rents, issues, and profits of the trust estate, and pay the entire net income received or derived therefrom, to herself." The remainder was bequeathed to a sister of the testator, who departed this life in March, 1937, and whose heirs are now the parties adversary to Mrs. Clarke and respondents here.

For some years Mr. Clarke had carried all his securities, which made the bulk of his estate of over a half million dollars, as the property of a personal holding company, the Hovey C. Clarke Corporation. Under the will, one-third of its stock went to appellant as her own property. The other two-thirds became hers as trustee. Early in 1933 she exchanged her third of its stock for a third of the assets of the corporation, which thereupon retired the stock so transferred to it. Since that transaction Mrs. Clarke, as trustee, has owned all its stock except for qualification shares. As trustee, she has been in complete and continuous control of the corporation. That power she promptly asserted by removing from the board of directors two of Mr. Clarke's executors and substituting her nephew, Mr. Blackmar, and his wife.

After setting up the corporation in 1924 and transferring thereto all his securities, Mr. Clarke, while he lived, caused dividends to be declared periodically, and of course took them all for himself as income. Those dividends were derived from two sources: (1) Interest on bonds and dividends from stocks, and (2) profit on sales of securities.

Because, as trustee, Mrs. Clarke has continued (and somewhat expanded) that technique, this controversy has arisen. The decision presents by enumeration instances where securities were sold for more than their cost to Mr. Clarke. Appellant caused the corporation to carry the profits so made as income, and to include them in dividends paid to her as trustee. All such dividends, whether reflecting current earnings or additions to capital, Mrs. Clarke, as trustee, paid to herself, as life tenant.

The bulk of the surcharge is the result of two transactions. In December, 1936, the Hovey C. Clarke Corporation sold stock of the Appleton Company, at a profit of $2,194.67, to Mr. Blackmar, the nephew whom appellant had made a director. The price was $23,540, for which the purchaser gave his note, due December 31, 1937. On or before maturity, it was "liquidated" by the corporation's repurchase of the stock at the very sum for which it had been sold. Mr. Blackmar's note was surrendered. So, although the cor-

poration made no actual profit on sale and repurchase, the initial pseudo gain of $2,194.67 became cash income for Mrs. Clarke, as life tenant. A dividend including that sum was paid to her as trustee, and by her taken as income.

In similar fashion, Hovey C. Clarke Corporation sold shares of the Shevlin-Hixon Company at an evanescent capital gain of $24,-135.90. The purchaser was the M. L. Clarke Corporation, another personal holding company organized by appellant after her husband's death and for her own purposes. The price was paid, $10,300 in cash and $35,000 by note of the M. L. Clarke Corporation. Again, within a year, the stock was repurchased by the Hovey C. Clarke Corporation at the price for which it had been sold. In the meantime, that corporation had carried the vanished profit into its income account and paid a dividend inclusive of that amount to Mrs. Clarke, as trustee. She appropriated all of it to herself as life tenant.

There has been much debate at the bar about the process of "piercing the veil" of, or disregarding, the corporate entity. For appellant the decision below is attacked as an unconscionable putting aside of a corporation, with consequent sterilization of its lawful action as a legal entity.

While the Hovey C. Clarke Corporation, during the period under review, was a legal entity distinct from the personality of appellant, it was yet an instrument wholly under her control. Over such a picture, presence of a corporation, so used by a trustee, throws nothing so thick as a veil. The corporation was so completely the trustee's tool that its transactions must be considered her own for purposes of accounting. That does not ignore the corporate entity. Neither does it reject the dominant fact that the corporation was but another self for the trustee.

We reject as fundamentally unsound and obsolete the thesis that a corporation can be regarded for any purpose as a mere fiction of law. To reduce it to a fiction is to make it nothing. Then to disregard it as a fiction is to disregard nothing. A fiction cannot sue or be sued, make and perform contracts, own property, com-

mit torts and crimes. A corporation can do all that, and so is not a fiction. So to consider it is to blind thought to large and important reality.

A corporation is not a person, but has a legal and real individuality. Neither is it artificial, save as it is a generation of law rather than nature. It is in simple fact a legal unit—a very real one—endowed by its creator with many of the rights and attributes of persons. It is so much *sui generis* that to attempt to define it, rather than to describe or enumerate its peculiar features, in terms of the law of persons, tends to obstruct rather than facilitate comprehension. Much worse is it to fictionize in decision concerning a thing about which there is no trace of the fictitious. Fiction has its useful place elsewhere, but not on the bench.[2] Litigants, whose personal and business affairs are real, rightly expect their controversies to go to judgment on real, rather than fictitious, bases.

Long ago we held that a corporation was so much a real fact that a deed of its real estate from the owner of all its stock was void on its face and not even a cloud on the company's title. Baldwin v. Canfield, 26 Minn. 43, 1 N. W. 261, 276. The result of Prudential Ins. Co. v. A. Enkema Holding Co. 196 Minn. 154, 157, 264 N. W. 576, 578, was reached because the owner of all its stock had used the corporation as a "mere agency to carry out his will." Nothing was gained by considering the corporation a fiction. The same end would have been reached had the main actor used another individual as he did his corporation.

Many cases present avowed disregard of corporate entity (*e. g.,* Matchan v. Phoenix L. Inv. Co. 159 Minn. 132, 198 N. W. 417). But they all come to just this—courts simply will not let interposition of corporate entity or action prevent a judgment otherwise required. Corporate presence and action no more than those of an individual will bar a remedy demanded by law in application to facts. Hence the process is not accurately termed one of disre-

---

[2]It has been otherwise to the important extent that legal fictions, along with equity and legislation, have been the potent "agencies by which law is brought into harmony with society." Maine, Ancient Law (3 Am. ed.) 24. "But fictions have had their day." *Id.* (Introduction) xvii.

garding corporate entity. It is rather and only a refusal to permit its presence and action to divert the judicial course of applying law to ascertained facts. The method neither pierces any veil nor goes behind any obstruction, save for its refusal to let one fact bar the judgment which the whole sum of facts requires.

For such reasons, we feel that the method of decision known as "piercing the corporate veil" or "disregarding the corporate entity" unnecessarily complicates decision. It is dialectally ornate and correctly guides understanding, but over a circuitous and unrealistic trail. The objective is more easily attainable over the direct and unencumbered route followed herein.

The notion of disregarding corporate entity serves no purpose, even as a catalytic in the judicial process. That is illustrated by United States v. Milwaukee R. T. Co. (C. C.) 142 F. 247. The case was heard on demurrer to a bill which charged that a large shipper had organized and was controlling the transit company as a dummy corporation to collect unlawful rebates. After an eminent jurist had used pages of discussion to justify intended disregard of the corporate entity, he came finally to the simple conclusion that there was a complete "identity of interest" between shipper and transit company, so that the payments to the latter were really for the benefit of the shipper. The same result would have been compelled if both shipper and its dummy had been individuals, or one or both a partnership. Neither would or could have been disregarded. That shows why, in such a case, there is no need even to pretend disregard of corporate entity. It is enough that, giving its entity full effect, a corporation has no right in the premises, or that such right as it has is no obstacle to required judgment.

Even where a corporation has been denied access to the federal courts because it was clandestinely organized only to confer jurisdiction, there has been no need to disregard corporate entity of the offender. In fact, decision operates directly upon that entity. It is based upon the simple fact that the corporation *as such* had no right to invoke federal jurisdiction. Miller & Lux, Inc. v. East Side Canal & I. Co. 211 U. S. 293, 29 S. Ct. 111, 53 L. ed. 189.

580

In this field, so far as our possibly too limited vision now perceives, there is but one area wherein an argument based on fiction may remain essential to the conclusion. It is that of the rule, for purposes of federal jurisdiction, that a corporation is a citizen of the state of its incorporation. Marshall v. B. & O. R. Co. 16 How. 314, 14 L. ed. 953. Even there the fictional element consists not so much of any concept of entity as it does of the *presumption* that a corporation "must dwell in the place of its creation" and that its stockholders are "resident in the State which is the necessary *habitat* of the corporation." Even that fiction was considered to need the support of an estoppel on the stockholders "from averring a different domicil" for their corporation.

Even in the field of "insulation from liability through subsidiary corporations," it is well said that "in the approach there is no room for theorizing in respect to the corporate entity. The sole concern need be only with the purpose and the means of attaining it." The various concepts expressed by judges on that subject "themselves need defining. At best they merely state results. And the results are significant only in light of the facts." 39 Yale L. Journal, 193-195.

■ It is immaterial that the Shevlin-Hixon and Appleton stocks were property of the Hovey C. Clarke Corporation, and that the latter's stock was the trust *res*. In any view, the involved gains were but accretions to capital, to which Mrs. Clarke, as life tenant, had no claim.

While appellant is trustee of "principal, income, rents, issues, and profits," she is significantly restricted, as life tenant, to enjoyment of "net income." "Net income" used in this connection is unambiguous. It is ascertained by subtracting expenditures chargeable to income from receipts properly credited thereto. Restatement, Trusts, § 233. The rule is that:

"* * * money or other property received by the trustee as the proceeds of a sale or exchange of the principal of trust property is principal. * * * profits arising from the sale or exchange of the principal of trust property or any enhancements in the value

of the principal of trust property are allocable to principal, not income; and losses incurred by the sale or exchange or destruction of or damage by casualty to the trust property are chargeable to principal." *Idem,* comment b.

See also Matter of Hagen, 262 N. Y. 301, 186 N. E. 792; Minot v. Paine, 99 Mass. 101, 96 Am. D. 705; Long v. Rike (7 Cir.) 50 F. (2d) 124, 81 A. L. R. 521; 2 Perry, Trusts and Trustees (7 ed.) § 546d; 4 Bogert, Trusts and Trustees (1935) §§ 823, 824; *cf.* Nirdlinger's Estate, 290 Pa. 457, 139 A. 200, 56 A. L. R. 1303.

The result remains impregnable, however much importance is given the corporate entity and place of the Hovey C. Clarke Corporation. Inquiry must ascertain source and resulting nature of the dividends. For, "a distribution by a corporation which is a return of capital and not a distribution of earnings is principal." Restatement, Trusts, § 236(f). It follows that "a dividend which represents only the natural growth or increase in value of the property representing the original capital of the corporation, or of the permanent property or good will, is principal." *Idem,* comment z. See also Thayer v. Burr, 201 N. Y. 155, 94 N. E. 604; Holbrook v. Holbrook, 74 N. H. 201, 66 A. 124, 12 L.R.A. (N.S.) 768; du Pont v. Peyton, 15 Del. Ch. 255, 136 A. 149.

■ The foregoing shows how unimportant it is that the involved dividends were properly declared by the Hovey C. Clarke Corporation. That by no means prevents inquiry as to the source of the gain which made the dividends. Long ago, in Goodwin v. McGaughey, 108 Minn. 248, 122 N. W. 6, this court recognized the judicial duty, in trust accounting, to look behind dividends to ascertain whether they came from earnings made before the existence of the life estate. We held that a stock dividend declared by a bank during the period of the trust belonged to the life tenant as income. That conclusion is now the substance of the Restatement, Trusts, § 233.

To what extent a trustee must always at his own peril look into the source of a dividend in order to allocate it properly between capital and income, we do not now consider. We hold only that

when the dividend comes, as here, from a corporation which is but another self for the trustee, he makes an erroneous allocation at his own risk. He cannot even feign ignorance of a corporate mechanism of which he is the operator. If he is in doubt, it will be dissipated by a bill for instructions, as in Rhode Island Hospital Trust Co. v. Bradley, 41 R. I. 174, 103 A. 486.

■ The argument that because Mr. Clarke took all dividends, from whatever source derived, as income, Mrs. Clarke should be allowed a similar appropriation, is unsound. Mr. Clarke was in a very different category of status and duty from that in which his widow stands as trustee. He had no occasion to distinguish between rights of life tenant and remaindermen under an express trust. She is required to do just that with meticulous care. Mr. Clarke's will was carefully drawn by competent counsel. Its phrases, no other significance appearing, are to be given their ordinary meaning. What Mr. Clarke did with dividends from his own corporation has no relevance in determining what the trustee should do with them.

Appellant's argument to the contrary relies too much on DeBrabant v. Commercial Trust Co. 113 N. J. Eq. 215, 166 A. 533. The property in question was stock in a copper mining company. Award of dividends to life tenant was based in large part upon the rule, not applicable here, controlling in the case of wasting assets corporations. Evidence extraneous to the trust instrument was considered to show the settlor's intention. That was because his definition of "income" was considered ambiguous. With deference we submit that the decision inadvertently and too much ignores the fact that the settlor himself had by definition elaborated "income" to include "rents, issues, income, and profits" of the trust estate.

For the present case there is no such expansive definition by the settlor, and we are not dealing with wasting assets. The very fact that stock of a wasting assets corporation is part of the estate may render ambiguous the settlor's use of the word "income." Restatement, Trusts, § 239, comment e.

More in point is Rhode Island Hospital Trust Co. v. Bradley, *supra*. The involved stock and dividends were those of a land company and certain land trusts. The object of both company and trusts was to liquidate land, at a profit, if possible. As money was available, dividends were declared from profits on sales. The decision was that the use of the words "income, dividends, and profits" did not indicate intention that the life beneficiary should receive as income payments which were in fact monies realized from the sale of capital. (All the capital was in land.) Evidence extraneous to the will, of the intention of the testator, was considered inadmissible. It was ruled that all dividends, insofar as they represented profits on land sales, were not income, but should go to the corpus of the trust estate.

Mr. Clarke's treatment of capital gains as income does have this significance. It goes far to acquit Mrs. Clarke of intentional wrongdoing. Doubtless, rather than being motivated by intention to wrong the remaindermen, her only mistake has been to place confidence in unsound advice. (It was not that of her present counsel.) The fact remains that, while there has been no intentional wrong, there has been such invasion of the rights of the remaindermen, respondents here, as to amount to fraud, irrespective of intention.

■ By the decision below, Mrs. Clarke was surcharged with profits "on retirement" of a bond, distributed to her December 1, 1932, in the sum of $100. That was the entire capital gain on that transaction. It occurred before Mrs. Clarke transferred to the Hovey C. Clarke Corporation the one-third of its capital stock which she took under her husband's will. It occurs to us that, on the theory of the decision below, which was correct, she should have been charged with only two-thirds, instead of the whole, of the item. But that error is one of inadvertence, which should be corrected by motion below rather than by modification here. Without prejudice to such a motion and decision thereon, the order should be and is affirmed.

584

On April 6, 1939, the following opinion was filed:

Stone, Justice.

Maggie L. Clarke, appellant, has petitioned for rehearing on a point properly before us but inadvertently overlooked by the decision. It was not touched by appellant's main brief and has bare mention in her reply brief, but has been fully argued for respondent.

The point is that the decision below surcharged appellant, as trustee, not only with the principal sums in question but also with interest thereon. That, we must hold, is error, for appellant herself is the beneficiary and herself entitled to the interest as income.

Of course a trustee who appropriates to himself property which belongs to the trust will be charged accordingly. The charge against him ordinarily will include interest. Not so, however, where the trustee happens also to be life tenant and as such entitled to all sums paid in as interest. It is for that reason that St. Paul Trust Co. v. Strong, 85 Minn. 1, 88 N. W. 256, and the other cases cited by respondent on this point, including Smith v. Tolversen, 190 Minn. 410, 252 N. W. 423, are distinguishable. In none of them was the trustee, charged or chargeable with interest, also and concurrently the life tenant entitled to the interest as collected.

It follows that our former decision and order herein must be qualified and amended to this extent. Instead of being affirmed as it stands, the order will be modified to the extent of striking therefrom the provision for charging interest against appellant trustee. With such modification, the order should be affirmed.

So ordered.