### HAROLD WHITTEN v. CARL J. WRIGHT.[1]

December 8, 1939.

No. 32,141.

[1]Reported in 289 N. W. 509.

*Murphy & Cook,* for appellant.
*Swanson, Swanson & Swanson,* for respondent.

GALLAGHER, CHIEF JUSTICE.

On appeal from a judgment of the district court charging defendant as constructive trustee of certain property and the proceeds therefrom, the sufficiency of the findings of fact (which are not disputed) to support the conclusions of law and judgment entered in pursuance thereof is questioned.

The substance of the facts found by the trial court follows. Defendant, during all times herein mentioned, was employed by the Park Region Timber Company, at Brainerd, Minnesota, co-partnership consisting of S. J. Zeman and E. B. Sullivan, and engaging in the production and distribution of lumber and other timber products and, incidental thereto, in the acquisition, for themselves and others, of timber and, rarely, other lands in Crow Wing and Cass counties and vicinity. His duties (which included searching for, examining, and ascertaining titles to, and purchasing, such lands) salary, and other rights and obligations as an employe were, save for a period prior to January 1, 1936, fixed by an oral agreement. Plaintiff, a timber operator residing in Brainerd, has had quite continuous dealings with the timber company, including transactions whereby the company would advance or charge to plaintiff the purchase price of a tract of timber and the cost of acquiring it, taking or keeping title thereto as security, and permitting plaintiff to pay off the obligation by delivering timber to it. In connection with the examination and

acquisition of such tracts the timber company would furnish to plaintiff the services of defendant, charging plaintiff with defendant's expense.

In May, 1936, defendant ascertained that a certain estate included 12 tracts of land in Crow Wing county bearing desirable timber. In accordance with the directions of his employers, to whom he had reported this information, he entered upon negotiations with representatives of the estate for purchase of the parcels. Before a sale was consummated, plaintiff indicated to the timber company his desire to have and operate on these tracts, and it was agreed between them, with knowledge of defendant, that plaintiff should have the parcels for cost to the timber company (including defendant's expenses) plus a small profit. During the progress of negotiations with the estate's representatives (which included telephone conversations, trips by defendant to St. Paul where the decedent had resided, and trips by the representatives and defendant to the lands), defendant was instructed to obtain from the appointed representative or her attorneys a list of other lands in the vicinity believed to be part of the estate and the prices for which they would be sold. The list having been obtained, defendant was instructed by the timber company to turn it over to plaintiff so that the latter might choose, as he subsequently did, the tracts which he desired to buy.

On one of defendant's trips to St. Paul, the expenses of which were paid by plaintiff as aforesaid, defendant was informed from a source other than the representative or her attorneys that a parcel of land within a few miles of those above mentioned but not included in the list was part of the estate. He did not give to the timber company or plaintiff any of the information he had with respect to this parcel, nor any opportunity to determine whether to buy it or make an offer for it. Instead, he purchased the land with his own funds and caused his deed to be recorded.

While the lot was not one of a kind usually dealt with by the timber company or plaintiff, it was of a type which they occasionally handled in connection with their operations in other timber. There was an absence of evidence showing that plaintiff would

not have purchased the lot if given an opportunity to do so at the time and for the price at which it was purchased by defendant or that the timber company would not have given plaintiff an opportunity to do so. Parts of the lot were subsequently sold by defendant, and he has record title to that remaining.

The trial court concluded that defendant acquired and has ever since held his right, title, and interest in and to the tract and the proceeds thereof in trust for plaintiff, and entered judgment accordingly.

Reasons advanced by appellant in support of his contention that the trial court erred in raising a constructive trust of the property and the proceeds therefrom can be thus stated: (1) Defendant violated no duty owed by him to plaintiff because (a) there was no privity between them, (b) defendant fully complied with instructions given him, (c) the land purchased by him was not such as the timber company ordinarily purchased, and (d) there was no showing that plaintiff would have purchased the property had he known of it; (2) defendant's employment, authorizations, and instructions being wholly in parol, no action can be based on the alleged violation thereof.

■ It is well established that one who has profited by a breach of duty will be regarded as a constructive trustee of what has been improperly acquired. Where a party obtains legal title to land by fraud or bad faith or in any other unconscientious manner so that he cannot justly retain the property, equity will impress a constructive trust upon it in favor of the party equitably entitled to it. Henderson v. Murray, 108 Minn. 76, 121 N. W. 214, 133 A. S. R. 412; Nester v. Gross, 66 Minn. 371, 69 N. W. 39; Rollins v. Mitchell, 52 Minn. 41, 53 N. W. 1020, 38 A. S. R. 519. The rule stands on the moral obligation to refrain from placing one's self in positions which ordinarily excite conflicts between self-interest and integrity. It seeks to remove temptation by making it impossible to profit by yielding thereto. Gilbert v. Hewetson, 79 Minn. 326, 82 N. W. 655, 79 A. S. R. 486. In all transactions where the agent's loyalty is liable to be affected by his selfish interest, the general rule will apply even though no

fraud is practiced. Wilson v. White, 223 Mich. 497, 194 N. W. 593. See, generally, Smith v. Tolversen, 190 Minn. 410, 252 N. W. 423; Holmes v. Cathcart, 88 Minn. 213, 92 N. W. 956, 60 L. R. A. 734, 97 A. S. R. 513; Hegenmyer v. Marks, 37 Minn. 6, 32 N. W. 785, 5 A. S. R. 808; Harmony Way Bridge Co. v. Leathers, 353 Ill. 378, 187 N. E. 432; Latta v. Kilbourn, 150 U. S. 524, 14 S. Ct. 201, 37 L. ed. 1169; Beatty v. Guggenheim Exploration Co. 225 N. Y. 380, 122 N. E. 378; Davis v. Pearce (8 Cir.) 30 F. (2d) 85; Meinhard v. Salmon, 249 N. Y. 458, 164 N. E. 545, and comments thereon in 29 Col. L. Rev. 367, and 42 Harv. L. Rev. 953; Fox v. Simons, 251 Ill. 316, 96 N. E. 233; 31 Mich. L. Rev. 277; 28 Mich. L. Rev. 95; 39 Harv. L. Rev. 650; 12 Minn. L. Rev. 305; 13 Minn. L. Rev. 711; 12 Cornell L. Q. 502; 3 Bogert, Trusts and Trustees, § 492.

(a) Defendant argues that a constructive trust should not have been raised because there was no privity between him and plaintiff. We are of the opinion that for all practical purposes defendant was acting as agent for both the timber company and plaintiff when he acquired the information which he failed to disclose and which enabled him to make the purchase of land causing the present controversy. The timber company and plaintiff had in the past, to his knowledge, entered into transactions whereby defendant's employer financed plaintiff in timber operations which enabled the timber company better to carry on its business. One of the reasons for his employment was to discover desirable lands which the company and plaintiff could exploit under an arrangement which made their positions almost as close as joint adventurers. His services had been loaned to plaintiff in the past in connection with transactions of this type. The cost of the trips which he took to St. Paul was charged, as he knew it would be, to the account of plaintiff. The information which he acquired on these trips and which he disclosed to the timber company was turned over to plaintiff. Under these circumstances, and especially where both partners of the timber company testified in behalf of plaintiff, as the trial court states in its memorandum, we do not feel that defendant should be permitted to defeat equity by

428

resort to a highly technical view of the relation in which he stood to plaintiff.

(b) Defendant's contention that he complied with instructions and therefore breached no duty owed by him to those whom he represented is also overly technical. It is true that he was told only to get a list of property from representatives of the estate. But the obvious purpose of this instruction was to enable the party giving it to know what property of the estate was for sale. As part of his general duties, defendant was expected to search out and report such property. Subtle distinctions respecting the source of his knowledge will not serve to excuse him for failure to report information acquired at his principals' expense and in which he had reason to expect they would be interested.

(c–d) While the land bought by defendant was not such as was ordinarily purchased by the timber company and plaintiff, it was, according to the findings, of a kind which they occasionally handled in connection with their operations in other timber. Under the circumstances, we feel that it was defendant's duty to inform the timber company and plaintiff of the lot and let them decide if they wished to purchase it. The trial court specifically refused to find that plaintiff or the timber company would have bought the land had they been informed of it. But, as was pointed out by Mr. Mechem in his work on Agency (Vol. 1 [2 ed.] p. 867, § 1189), constructive trusts are raised to prevent agents from putting themselves in a position where they are susceptible to temptation. What is sought to be prevented in cases like the one before us is the practice on the part of agents of concealing from their principals information acquired by them in the course of their duties. It was defendant's failure to disclose his knowledge and give the timber company and plaintiff an opportunity to purchase which was wrong. Such being the case, it is immaterial whether or not the employer would in fact have bought the land.

■ While 2 Mason Minn. St. 1927, § 8459, requires that trusts or powers over or concerning land be in writing, the statute specifically excepts from its scope trusts arising by operation of

law. The trial court regarded defendant as a constructive trustee of the property in question and the proceeds thereof because he had acquired the tract of land as the result of a violation of duty owed by him to plaintiff. He is held to be a trustee not because of his intent but in spite of it. The trust arises by operation of law, and a writing is not required.

To be distinguished is Dougan v. Bemis, 95 Minn. 220, 103 N. W. 882, 5 Ann. Cas. 253, where this court refused to enforce an oral promise on the part of defendant to afford plaintiff an opportunity to share in the ownership of a parcel of land purchased by defendant. Apart from this oral agreement, no relation of trust and confidence existed between the parties. The confusion caused by applying the rule of the Dougan case to problems such as the one before us can be avoided by asking, as suggested in Matney v. Yates, 121 Va. 506, 517, 93 S. E. 694, 697, this question as a test: "Was the contract in its essence and effect one of agency, or was it one for the purchase of real estate? If it was the former" (as in the case now before us), "it creates a trust relation, is not within the statute of frauds, and can be established by parol; if the latter" (as it was in the Dougan case), "the parties are to that extent dealing with each other as principals and the contract is within the statute and can only be established by such a writing as will meet the requirements thereof." For a general discussion of the problem, see Feezer, "Constructive Trusts in Cases of Agency to Buy Real Estate," 17 Minn. L. Rev. 734.

The judgment of the trial court should be affirmed.

Affirmed.