## HIGBEE CO. v. CLEVELAND TERMINALS BLDG. CO.

## CLEVELAND TERMINALS BLDG. CO. v. HIGBEE CO.

### Nos. 8242, 8243.

Circuit Court of Appeals, Sixth Circuit.

Sept. 18, 1939.

Gardner Abbott, of Cleveland, Ohio (Gardner Abbott, Frank E. Joseph, and Jones, Day, Cockley & Reavis, all of Cleveland, Ohio, on the brief), for Higbee Co.

I. Walter Sharp, J. Hall Kellogg, and Hauxhurst, Inglis, Sharp & Cull, all of Cleveland, Ohio, for Cleveland Terminals Bldg. Co.

Bushnell, Burgess, Fulton & Chandler and R. F. Fullmer, all of Cleveland, Ohio, for Metropolitan Life Ins. Co. and Cleveland Trust Co., trustee.

Baker, Hostetler & Patterson, E. S. Lindemann, and Oliver Stamper, all of Cleveland, Ohio, Thomas J. Herbert, Atty. Gen., and A. O. Husband and Charles F. Carr, both of Cleveland, Ohio, for J. P. Morgan & Co., Cleveland Trust Co., Midland Bank, Union Bank of Commerce Co., and S. H. Squire.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

ALLEN, Circuit Judge.

These appeals arise out of a controversy in a 77B proceeding between the Higbee Company, debtor, and the Cleveland Terminals Building Company, creditor, over the validity and construction of a certain refunding and rental agreement, hereafter described. The Higbee Company, hereinafter called lessee, which operates a department store in the city of Cleveland, Ohio, leased certain premises on the Public Square in Cleveland from the Building Company, hereinafter called lessor. Five leases were executed, lease No. 1 being called the main lease, under which the rent was fixed at a minimum of $600,000 per annum. Leases 2 to 5 demised certain separate quarters in the Terminal Building to the lessee, the rent being based upon net sales. At the time the main lease was executed, the lessor mortgaged the Terminal Building to a trustee for the Metropolitan Life Insurance Company. The main lease was assigned as security for the mortgage. The lessee had borrowed $1,500,000 from the lessor, and had borrowed $1,600,000 from certain banks, and in agreements which are not material here, the $1,500,000 debt had been subordinated to the $1,600,000 debt, called by the parties the senior and junior indebtedness respectively.

During the depression the lessee became unable to meet its obligations to its landlord and banking creditors, and all parties entered into an agreement with reference thereto, under which the lessee operated from July 1, 1932, to February 28, 1934. Under this agreement the lessee executed and delivered to the lessor a note for $413,000 which it endorsed and delivered to the trustee of the Metropolitan Life Insurance Company. On May 21, 1935, a refunding agreement providing for lower rentals was executed, effective as of January 1, 1935, and by its terms retroactive to March 1, 1934. It was signed by the lessor, the

lessee, the Metropolitan Life Insurance Company, S. H. Squire, Superintendent of Banks of Ohio in Charge of Liquidation of the Union Trust Company, the Cleveland Trust Company, the Midland Bank, S. H. Squire, Superintendent of Banks of Ohio in Charge of Liquidation of the Guardian Trust Company, J. P. Morgan & Company, and the Vaness Company.

As the lessee's charter prohibited the execution of notes running beyond a year, it was amended by appropriate corporate action so that the plan of the refunding agreement, which called for the issuance of long-term notes, might be carried out. Before the notes were executed and delivered, a judgment of $769,000 was secured against the lessee. In order to prevent enforcement of the judgment, the lessee filed a petition for reorganization under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. Later the judgment was reversed by the Supreme Court of Ohio. North v. Higbee Co., 131 Ohio St. 507, 3 N.E.2d 391.

Under the order of the referee in bankruptcy and in accordance with the refunding agreement, the lessee made monthly payments of rent from May 28, 1937, to August 1, 1938. In March, 1938, $320,-315.50 was paid on the principal of the senior debt, being divided among three creditors. The lessor excepted to these disbursements, and on April 1, 1938, filed a notice of acceleration of maturity of the obligations due it from the lessee, including the two notes which it had pledged with the trustee of the Life Insurance Company, aggregating $534,250, and four other notes aggregating $38,300. All but one being notes originally executed under the agreement of 1932. The Life Insurance Company denied the authority of the lessor to accelerate the notes held by the Life Insurance Company, and stated that it did not ratify the action of the lessor.

The refunding agreement contained an acceleration clause, which reads as follows:

"In the event that the interest on the notes representing the senior indebtedness is not paid when due, or in the event that the amounts payable on account of the principal out of net earnings are not paid when due, or in the event that the minimum payments provided for in the preceding paragraph are not paid when due, the said notes shall become due and payable at once at the option of the respective holders thereof."

Other material portions of the refunding agreement are as follows:

"The above provisions for the payment of rental shall continue until March 1, 1940, provided that if all the notes representing the senior indebtedness are paid before March 1, 1940, or if any or all of said notes are accelerated and become due and payable before March 1, 1940, then the above provisions shall cease and determine on the date of such payment or acceleration. * * *"

"The original provisions of such lease shall again come into effect on March 1, 1940, or on the date of the earlier payment or acceleration of the notes representing the senior indebtedness, subject, however, (except in case of the acceleration of such notes) to such modification of the provisions of said lease respecting the rent to be paid thereunder by agreement between The Cleveland Terminals Building Company and The Higbee Company as may be acceptable to The Metropolitan Life Insurance Company and in default of which such lease shall forthwith cease and determine."

The lessor filed an application to require the lessee to pay delinquent rent and current rent at the rates set forth in the original lease, and to require the lessee to affirm or reject its leases. The referee decided that the refunding agreement was valid and that the notice of acceleration was ineffective under the contract to restore the original rentals because a preponderance in amount of the notes was not accelerated. The District Court held that the refunding agreement was valid, and that the notice of acceleration was effective to reinstate the original leases from and after April 1, 1938. The lessee appeals from so much of the order as holds that the notice of acceleration terminated the modification of rentals set forth in the refunding agreement, and reinstated the original leases. The lessor appeals from so much of the order as holds the refunding agreement valid and approves payments made to creditors prior to the notice of acceleration.

The principal question on the appeal of the lessor is whether the refunding agreement was valid and binding on it.

We think the District Court rightly decided that the refunding agreement was valid and binding on August 9, 1935, when the petition for reorganization was filed. After that time the contract was under

the control of the bankruptcy court. The refunding agreement was supported by substantial consideration, namely, mutual promises passing not only between the lessee and the lessor, but also between the mortgagee and the bankers, creditors of both the lessor and the lessee. The refunding agreement provided that new notes should be executed and delivered to supplant notes previously executed under the .contract of July 1, 1932. The new notes had not been executed prior to the institution of the bankruptcy proceedings. The lessor contends that the non-delivery constitutes a breach of condition precedent, and that the refunding agreement never became effective. This contention is untenable. This agreement was executed May 21, 1935. No time was provided therein for the delivery of the notes, and therefore it was required that they be delivered within a reasonable time. The lessee had promptly acted to amend its charter so that it might lawfully execute the notes. At the time of the filing of the 77B proceedings the forms of notes had not been agreed upon, and a reasonable time had not expired, nor can it be said that any breach of the contract arising out of failure of delivery existed upon August 9, 1935.

Assuming, but not deciding, that the refunding agreement required formal corporate approval by all parties, as contended by the lessor, and that approval in form was not given, this condition was waived by the long-continued operation under the agreement and the acceptance of benefits thereunder by the lessor, as well as the other parties thereto.

Other substantial acts called for by the contract had been performed. The lessee had applied to the senior indebtedness and rentals substantially all of its net earnings for eleven months prior to February 1, 1935, and although it retained $250,000 thereof, it had given a note therefor accepted by the lessor, and early in August, 1935, had paid all interest due to the date of the filing of the petition for reorganization. Moreover, after these proceedings, and up to April 1, 1938, the lessor continued to act under the refunding agreement, and thus waived its right to rescind because of non-performance by the lessee. Pickens County v. National Surety Co., 4 Cir., 13 F.2d 758, 762; Miami Cycle & Mfg. Co. v. Robinson, 6 Cir., 245 F. 556, 561, 562.

Regular monthly payments were made both under the main and subsidiary leases, and accepted by the lessor from May 28, 1937, to April 1, 1938. Both the lessee and the lessor treated the contract on their books as valid and subsisting. In a 77B proceeding instituted by the lessor, it included the refunding agreement in a list supplementing its schedules of assets and liabilities. We conclude that the refunding agreement was valid and binding upon all parties, and that distribution of net earnings made by the lessee pursuant thereto prior to notice of acceleration was proper.

[6] The question on the appeal of the lessee is whether the notice of acceleration was effective to restore the original rate of .rentals. We think that the court was in error in deciding that this notice revived the original rentals under the lease. Two of the larger notes had been delivered to the trustee for the Metropolitan Life Insurance Company, which was the beneficial owner thereof, and the real party in interest with reference to the main lease. It did not authorize the notice of acceleration. The contract provided that the notes could be accelerated "at the option of the respective holders thereof." The lessor was not the holder of these particular notes, and as to such notes, the notice of acceleration was not effective.

As to the four remaining notes, we think that the notice of acceleration does not revive the original rentals, for the reason that the contract does not provide that they shall be revived upon acceleration of notes representing a fraction of the senior indebtedness. This indebtedness included obligations owed by the lessee to J. P. Morgan & Company, the Midland Bank, the Union Trust Company, and the Guardian Trust Company, the latter two banks then in liquidation under state law. The refunding agreement entered into by all of these parties made a marked distinction between the two paragraphs of the refunding agreement heretofore given, which relate to acceleration. The paragraph which provides for determination of the rental provisions of the refunding agreement in case of acceleration says that it applies "if any or all of said notes are accelerated." The paragraph which provides for reinstatement of the original provisions of the lease says that they come into effect upon the acceleration "of the notes representing the senior in-

800

debtedness." This difference in phrasing is not to be ignored, and the latter paragraph evidently means that reinstatement provisions do not come into effect unless all of the notes included in the senior indebtedness are accelerated and not merely a part of them. Hence the original provisions of the lease were not reinstated by the lessor's action.

Since the lessor has assigned the lease to the trustee for the Metropolitan Life Insurance Company, the trustee is now the real party in interest under the lease, and the only party qualified to file a proof of claim for rent under the main lease. The record presents no such claim. Since the real party in interest has advanced no claim, it is not necessary, and is perhaps premature, to decide the question of the claimed priority of payments for rent under the refunding agreement.

That part of the order to which the appeal of the lessee is directed is reversed.

That part of the order to which the appeal of the lessor is directed is affirmed.

The case is remanded for further proceedings in accordance with this opinion.