658

YOUNG et al. v. BRADLEY et al. (two cases).
TERMINAL & SHAKER HEIGHTS REAL-
TY CO. v. SAME.

KOLBE v. SAME (two cases).
Nos. 9618–9622.

Circuit Court of Appeals, Sixth Circuit.
April 21, 1944.

Robert J. Bulkley, of Cleveland, Ohio, for appellant Terminal & Shaker Heights Realty Co.

Robert W. Purcell, of Cleveland, Ohio, and Samuel Spring, of New York City, for all other appellants.

Robert J. Bulkley, James A. Butler and Robert W. Purcell, all of Cleveland, Ohio, on the brief for appellants Young and others.

Samuel Spring, of New York City, on the brief, for appellant Kolbe.

L. C. Wykoff, of Cleveland (McKeehan, Merrick, Arter & Stewart and George William Cottrell, Charles K. Arter, and L. C. Wykoff, all of Cleveland, Ohio, on the brief), for appellees.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

## ALLEN, Circuit Judge.

The appellants filed claims in a bankruptcy proceeding asserting equitable title to certain securities of the Higbee Company, a Delaware corporation operating a department store in Cleveland, Ohio, debtor in a reorganization proceeding. The securities in question are 100,000 shares of common stock of the Higbee Company, and three notes of the Higbee Company totaling $1,620,715.39, due March 1, 1934. Appellants Young, Kirby and Kolbe assert that the securities should be impressed with a constructive trust in their favor because of violation of a fiduciary relationship in purchase of the securities by the appellees. The claim of the Terminal and Shaker Heights Realty Company, while based upon different issues of fact, presents a similar contention of law. A suit in the District Court, filed by Young and Kirby, joined Bradley, Murphy and others as defendants and stated a case based upon

the same issues as the claims in the bankruptcy proceedings. By agreement of counsel the two cases were heard together, and the two records were consolidated here. The District Court entered a decree finding all issues in favor of the appellees, adopting and confirming the report of the special master, allowing the claims of Bradley and Murphy to the Higbee securities, and dismissing the claims of Young, Kirby and Kolbe and the Terminal and Shaker Heights Realty Company in the bankruptcy case, and dismissing the civil action.

On May 5, 1937, Young, Kirby and Kolbe purchased from George A. Ball or the George and Frances Ball Foundation, hereinafter called Ball, 93% of the stock of the Allegheny Corporation, a holding company which owns the Chesapeake Corporation and various railroad and coal interests, and 93% of the stock of Midamerica, a holding company now known as the Terminal and Shaker Heights Realty Company. Young, Kirby and Kolbe claim that by virtue of their control of the companies they placed Bradley and Murphy in salaried positions in the Allegheny Corporation as president and secretary respectively, and they retained them as non-salaried officers of Midamerica. They contend that Bradley and Murphy undertook to act for Young, Kirby and Kolbe, thus becoming charged with the fiduciary duty to further the private interests of Young, Kirby and Kolbe, and became obligated to purchase the Higbee securities on behalf of the Young syndicate and its individual members. Bradley and Murphy acquired the Higbee securities by a contract of sale made May 15, 1937. The purchase was consummated June 4, 1937, by the execution and transfer of the necessary papers while Bradley and Murphy were employed by Allegheny and during their incumbency as officers of Midamerica. The appellants charge that the purchase placed Bradley and Murphy in a conflicting position and interfered with the performance of their fiduciary duties, and that it was secured through a conspiracy between George A. Ball, Bradley and Murphy by which Bradley and Murphy, in consideration of the sale on easy terms, agreed to further Ball's interest in the Allegheny Corporation.

The master made extended findings in favor of Bradley and Murphy. These findings were in all respects confirmed by the District Court, which also added find-

ings of its own in favor of the appellees. Decision here, therefore, is governed by the familiar rule that such findings of fact cannot be set aside except for clear mistake.

▇▇ To warrant the imposition of a constructive trust, evidence that the fiduciary relationship existed and was breached must be clear and convincing. Pratt v. Shell Petroleum Corp., 10 Cir., 100 F.2d 833, 837. Here the material allegations of appellants' various claims cannot be said to have been proved even by a preponderance of the evidence. On the whole record, the finding of the court that Young, Kirby and Kolbe never asked or expected Bradley and Murphy to act for them, that Bradley and Murphy were not individual employees of Young, Kirby and Kolbe and did not undertake to act for them or for the syndicate, is amply sustained. The testimony as to the numerous transactions is in sharp controversy between the various protagonists, but, as found by the master, swings conclusively in favor of Bradley and Murphy, on consideration of the testimony of disinterested witnesses and of various letters which passed between the parties. Young, Kirby and Kolbe assert that they did not know that Bradley and Murphy were negotiating for the Higbee securities. Bernard, Ball's attorney, stated that he told them of that fact, and Kolbe conceded that Ball stated to him in March, 1937, that the Higbee securities were not for sale to a syndicate which Kolbe represented, because they were being purchased by two Cleveland men connected with the Van Sweringen organization. Bradley and Murphy, to Kolbe's knowledge, were both Cleveland men who had been connected with the Van Sweringen group. It is conceded that Ball at no time negotiated with the Young syndicate for the sale to the Syndicate of the Higbee securities.

Young stated that on May 13, 1937, he informed Bradley that he intended to contact Ball and try to purchase the store, but Bradley denied this. A letter which Young testified he wrote to Ball proposing the purchase was produced, but it does not mention the Higbee securities. As found by the master, it tends to discredit other testimony of Young. Young asserted that on July 8, 1937, having learned through a newspaper that the Higbee securities had been sold to Bradley and Murphy, he de-

nounced Bradley in his hotel apartment, and demanded that the securities be sold to the Young syndicate. While Kolbe and Young's cousin, McKinney, corroborated this statement, Bradley denied it, and several disinterested witnesses remembered no such conversation. Not until May, 1941, was any claim of a constructive trust in the Higbee securities asserted on behalf of Young, Kirby and Kolbe, in spite of sharp controversies existing between Young, Bradley and Murphy, growing out of the corporate affairs of Allegheny and Chesapeake. In numerous letters written by Kolbe to Murphy from March, 1937, to June, 1941, there was no mention of a breach of fiduciary relationship or of any claim of constructive trust in the Higbee securities. Young and Kolbe concede that at no time did the syndicate offer either to Ball or to Bradley and Murphy any price whatever for the securities. In fact the entire record shows by convincing evidence that not until after the Higbee Company had become a very profitable enterprise was the present claim asserted.

▇▇ The charge to the effect that Bradley and Murphy purchased the securities under a secret understanding with George A. Ball is equally unfounded. It is based on the proposition that the consideration paid by Bradley and Murphy was $60,000 cash and the balance in a note secured by the Higbee securities as collateral, that is, secured simply by the value of the properties themselves. It is asserted that this was a lower price than Young, Kirby and Kolbe would have paid, and that Ball sold the securities to Bradley and Murphy at a sacrifice with the understanding that they would support George A. Ball's interests in the Allegheny Corporation. Young stated that Bradley, in the course of a controversy in the Allegheny Corporation, declared that he was working for George A. Ball. Bradley denied this. The sum paid for the Higbee securities, in view of the financial collapse of the Van Sweringen interests, as found by the District Court, was adequate and substantial. The assertion that Ball sold the securities to Bradley and Murphy at a sacrifice and that the Young syndicate would have paid much more, is completely negatived by the conceded fact that no offer was ever made to Ball to purchase these securities on behalf of the Young syndicate. Kolbe's original conversation with Ball was with reference to a syndicate which included certain Gen-

eral Motors officials who were interested in the Van Sweringen empire, and the Young syndicate never offered to buy the securities from Ball or Bradley at any price.

The above circumstances completely dispose of any claim of constructive trust on behalf of Young, Kirby and Kolbe. Wherever one person is placed in such a relation to another that he becomes interested for him or with him in any subject of property or business, he is in such a fiduciary relation that he is prohibited from acquiring rights in the property or business antagonistic to the person with whose interests he has become associated; and if, by means of interest or information secured through the fiduciary relation he acquires any property or interest which prevents or hinders his associate in accomplishing the object of the agency, the property thus acquired is charged with a constructive trust. Trice v. Comstock, 8 Cir., 121 F. 620, 623, 61 L.R.A. 176. As stated by Judge Sanborn in that case, "The only indispensable elements of a good cause of action to enforce such a trust are the fiduciary relation and the use by one of the parties to it of the knowledge or interest he acquired through it to prevent the other from accomplishing the purpose of the relation." Thus when an employee in a fiduciary employment makes an investment in property which has an intimate relation to the property which is the subject of the trust, the employer at his election may hold the employee as trustee. Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378; Pratt v. Shell Petroleum Corp., supra; Byrne v. Barrett, 268 N.Y. 199, 197 N.E. 217, 100 A.L.R. 680; Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 54 A.L.R. 1173; Whitten v. Wright, 206 Minn. 423, 289 N. W. 509. Persons occupying a fiduciary relationship towards others are not permitted to assume positions which bring their private interests into conflict with the interests of those to whom they owe the fiduciary duty. Bisbee v. Midland Linseed Products Co., 8 Cir., 19 F.2d 24, 28; Ashman v. Miller, 6 Cir., 101 F.2d 85, 91; Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 62 A.L.R. 1; In re The Van Sweringen Co., 6 Cir., 119 F.2d 231. But here, Bradley and Murphy never entered into a fiduciary relationship with Young, Kirby and Kolbe. They were paid, not by the syndicate, but by Alle-

gheny. If the relationship ever existed, it concededly did not exist at the time the negotiations were begun for the acquirement of the Higbee securities in January, 1937. The indispensable elements of a good cause of action for constructive trust (Trice v. Comstock, supra) are clearly lacking. Bradley and Murphy acquired no knowledge of the Higbee securities from the Young syndicate; their purchase was not the result of any confidence reposed in them by the syndicate, and in no way was their connection with Young, Kirby and Kolbe used to prevent them from acquiring the property. There is no proof presented to justify the conclusion that there was a specific duty on the part of Bradley and Murphy to act or to contract with reference to the Higbee securities as agent of Young, Kirby and Kolbe. Cf. Guth v. Loft, Inc., 23 Del.Ch. 255, 5 A.2d 503.

The private and personal activities of a fiduciary such as an agent, officer or director, are not limited by his fiduciary duty to his principal or corporation unless they have a direct relationship to the activities of his principal or corporation. Latta v. Kilbourn, 150 U.S. 524, 14 S.Ct. 201, 37 L.Ed. 1169; Bisbee v. Midland Linseed Products Co., supra; Ashman v. Miller, supra. The purchase of the Higbee securities had no direct relationship to the activities of Young, Kirby and Kolbe as individuals or as a syndicate.

Many similar considerations require affirmance of the decree as to the claim of Midamerica. This claim is asserted to arise out of its having succeeded to the rights of the Cleveland Terminals Building Company (hereinafter called C. T.B.) by its ownership of stock in the Van Sweringen Company, creditor and sole stockholder of C.T.B. In brief, it is claimed that it was to the interest of C.T.B., which owned the building occupied by the Higbee store, that the rent paid by the Higbee Company be increased, while it was to the interest of Bradley and Murphy as owners of the Higbee securities to have the rent reduced. It is urged that by the purchase of the Higbee securities Bradley and Murphy assumed a position in which they could not faithfully serve both masters, and in fact sought to have the rent reduced and the second mortgage eliminated contrary to the interest of C.T.B. If C.T.B. had any substantial interest in this matter, and if its

claim were not barred by estoppel and laches, we think that a substantial conflict of interest would have been created between the parties. But C.T.B., several years prior to the sale of the securities to Bradley and Murphy, had assigned the lease on the Terminal Building occupied by the Higbee store to the trustee for the Metropolitan Life Insurance Company, the first mortgagee. This court, in Higbee Co. v. Cleveland Terminals Building Co., 6 Cir., 106 F.2d 796, 799, 800, held that the trustee thus became the real party in interest and the beneficial owner of notes aggregating more than $570,000, for rent due from the lessee. The Cleveland Terminals Building Company had only a nominal interest in the building, and the fact that Bradley and Murphy became the owners of the Higbee securities could in no way interfere with any real interest of Midamerica or C.T.B. Hence no fiduciary duty toward Midamerica arose with reference to these securities. Moreover, prior to the purchase by Bradley and Murphy, Midamerica had divested itself of all interest in the Higbee securities, and had transferred them to Ball. As correctly held by the District Court, Ball thereafter had title to these securities and the right to dispose of them. Since Midamerica had no interest in the securities after May 4, 1937, the disposition of them to Bradley and Murphy in no way interfered with any interest of Midamerica, nor hindered or defeated any of its plans or purposes.

It follows that the District Court was correct in concluding that Bradley and Murphy owed no duty either to Young, Kirby or Kolbe, or to Midamerica, and properly dismissed the claims.

■ This conclusion is supported by certain equitable considerations. On March 2, 1942, Bradley and Murphy borrowed money to pay the note which had been given in purchase of the Higbee securities and tendered to Midamerica, which then held the note, the amount of the principal and interest, which tender was refused. On June 3, 1942, before the hearing in this proceeding began, Midamerica notified Bradley and Murphy that it would accept payment of the note, and Bradley and Murphy again borrowed the necessary sum and paid in open court the amount of $566,290.36. Midamerica addressed a letter to J. P. Morgan & Company, authorizing recognition of Bradley and Murphy as owners of a participation in the senior debt which was a part of the Higbee securities. Thus Midamerica placed itself in a position sharply inconsistent with the position which it now asserts. If Bradley and Murphy were obligated to pay the note, then the purchase was valid and they have both legal and equitable title to the securities. By its demand for payment, Midamerica acquiesced in the transaction and recognized the right of Bradley and Murphy. Whether this be considered as a binding election of remedies or as an equitable estoppel (Miller v. Ahrens, C.C., 163 F. 870; Quinlan v. Myers, 29 Ohio St. 500; Frederickson v. Nye, 110 Ohio St. 459, 144 N.E. 299, 35 A.L.R. 1163), in any case Midamerica is barred from changing its ground after Bradley and Murphy have altered their position substantially for the worse. All of the elements of equitable estoppel are presented. Railway Co. v. McCarthy, 96 U.S. 258, 24 L.Ed. 693; Texas Co. v. Gulf Refining Co., 5 Cir., 26 F.2d 394.

■ The same considerations raise an estoppel against Young, Kirby and Kolbe. As principal owners of Midamerica, they instigated the demand by Midamerica that Bradley and Murphy pay the note, and thereby precluded themselves from asserting the present equitable claim.

■ Finally, the failure for four years to assert their claims would bar the appellants if their contentions had more substantive merit. We agree with the special master that the statute of limitations does not bar these claims; they are suspended during the pendency of the reorganization proceedings. Section 77B(b) of the Bankruptcy Act, 11 U.S.C.A. § 207 (b). However, laches may exist irrespective of the statute of limitations. Patterson v. Hewitt, 195 U.S. 309, 25 S.Ct. 35, 49 L.Ed. 214; Alexander v. Phillips Petroleum Co., 10 Cir., 130 F.2d 593. Cf. Harris v. Wallace Mfg. Co., 84 Ohio St. 104, 95 N.E. 559. Here, as in the Harris case, Bradley and Murphy, with full knowledge of the appellants, were devoting their money and effort over a period of four years in placing the department store in efficient financial operation. After the hazard is over and the skill, knowledge and money of Bradley and Murphy have made the investment profitable, appellants claim it. Cf. Twin-Lick Oil Co. v. Marbury, 91 U.S. 587, 593, 23 L.Ed. 328. But a

person may not withhold his claim awaiting the outcome of a doubtful enterprise, and after financial success has resulted assert his interest, especially where he has thus avoided the risks of the enterprise. Alexander v. Phillips Petroleum Co., supra, 130 F.2d at page 605. Cf. Wade v. Pettibone, 11 Ohio 57, 37 Am. Dec. 408.

It is not necessary, in view of the elaborate findings of fact of the master, together with the additional findings of the District Court, all of which are amply supported by the record, either further to discuss the complicated facts of the case, or to comment upon every phase of the legal questions which have been raised by counsel.

The decree is affirmed.