## MAGIDSON
### v.
### DUGGAN et al. (two cases).
### Nos. 14653, 14688.

United States Court of Appeals, Eighth Circuit.

May 11, 1954.

Rehearing Denied July 1, 1954.

**750**

Orville Richardson, St. Louis, Mo., (Max Sigoloff and James D. Dockery, St. Louis, Mo., on the brief), for appellant.

George O. Durham, St. Louis, Mo. (B. Sherman Landau and Noah Weinstein, St. Louis, Mo., on the brief), for appellees.

Before SANBORN, JOHNSEN and COLLET, Circuit Judges.

SANBORN, Circuit Judge.

These appeals are from two judgments entered in an action brought on March 17, 1949, by Jerome F. Duggan, Trustee of the Estate of Christopher Engineering Company, a corporation, Debtor, and of National Aircraft Corporation, a corporation, Subsidiary Debtor, in reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., against Hascal Schneider and Max Schneider, doing business as Seco-Lite Manufacturing Company, and Phil Magidson, to recover, for the estates of the debtors, Magidson's one-half interest in the profits of a joint venture in which Magidson and the Schneiders had engaged. The action, a plenary suit in equity, was brought in the reorganization court.

The trustee Duggan in his complaint alleged that on July 1, 1942, defendant Magidson entered the employment of the Christopher Engineering Company as a skilled and confidential employee under a written contract of employment, copy of which was attached to the complaint; that Magidson abandoned his employment on or about August 1, 1943; that in the course of his employment Magidson was assigned to and rendered service in connection with the business of various associates and subsidiaries of the Christopher Engineering Company, including National Aircraft Corporation, during which he acquired full knowledge of the business of his employer, its associates and subsidiaries, including "manufacturing processes, costs and prices and the names and requirements of its customers and of its trade lists and business information generally"; that as an equitable incident to his employment and by the terms of his contract Magidson occupied toward Christopher Engineering Company and toward its employees, customers, associates, and subsidiaries, a position of trust and confidence analogous to that of an equitable trustee, and that by the terms of his contract he was prohibited from reaping any secret profit or advantage therefrom; that nevertheless Magidson during the course of his employment and while bound by the terms of his contract secretly entered into a joint venture with Hascal Schneider and Max Schneider, doing business as Seco-Lite Manufacturing Company (hereinafter referred to as "the joint venture"), on or prior to July 15, 1943, and in the prosecution of the joint venture used the skill and knowledge derived by him as the result of his employment by, and in connection with the business of, Christopher Engineering Company and its associates and subsidiaries without its knowledge or consent.

The trustee alleged that the joint venture of the Schneiders and Magidson earned profits in excess of $100,000, one-half of which ostensibly by the agreement of the joint venturers belonged to Magidson, but to which in law and equity plaintiff was entitled for the benefit of the estates of which he was trustee in re-

organization, and that Magidson had received, on account of the net profits of the adventure, advances in the sum of $7,500, to which the trustee was entitled.

The complaint continued with the allegation that the defendants Schneiders had instituted an action in the Circuit Court of the City of St. Louis, Missouri, for a declaratory judgment against Magidson for the purpose of judicially determining the profits derived from the joint venture; that this action was then pending in the State court; and that the Schneiders had deposited $90,000 in the registry of the State court pending the determination of the litigation.

On the facts alleged, plaintiff asked for an order staying proceedings in the State court in the action between Magidson and the Schneiders and impounding the fund in the registry of the state court and requiring its transfer to the registry of the reorganization court; for judgment in favor of the trustee establishing his title to Magidson's share in the profits of the joint venture and enjoining Magidson from claiming or asserting any right, title or interest in the profits; and, on final statement of the account as between Magidson and the Schneiders, for judgment against Magidson for all advances theretofore received by Magidson from the operation of the joint venture, with interest from the dates received.

Magidson answered the complaint, denying in detail the allegations made against him, pleading affirmative defenses, laches, the Missouri five-year statute of limitations, estoppel, and waiver. The defendants Schneiders were permitted to withhold any pleadings until after the issues between the trustee and Magidson were decided, the issues between the trustee and Magidson having by consent of the parties been severed from those as between the trustee and the Schneiders.

In No. 14,653, the controversy as between the trustee and Magidson, all issues were resolved in favor of the trustee. Judgment was entered for the trustee establishing his title, to the exclusion of Magidson, in all that portion of the undistributed profits of the joint venture to which Magidson was entitled under the agreement with the Schneiders, and against Magidson and in favor of the trustee for the aggregate of all distributions theretofore received by Magidson from the joint venture. The officer of the State court having possession of the fund deposited in the registry of that court in the action between the Schneiders and Magidson was ordered to forthwith deliver the fund to the clerk of the reorganization court. All further proceedings in the action pending in the State court were permanently enjoined. Magidson was permanently enjoined from claiming or asserting as against the Schneiders any right or interest in the impounded fund or in the undistributed profits of the joint venture with the Schneiders.

Magidson's motion to set aside the judgment of the reorganization court and for a new trial was denied. Magidson appeals from the judgment.

On the final determination of the issues as between Magidson and the trustee, the Schneiders filed an answer in the reorganization court, admitting that the trustee was entitled to one-half of the net profits of the joint venture with Magidson, but that the amount of the profits had not been determined, and requesting the court to state the account as between them and the trustee. Following the proceedings on this phase of the case (No. 14,688), judgment was entered ordering the clerk of the reorganization court forthwith to pay from the $90,000 on deposit in the court the sum of $43,861.09 to the trustee Duggan and the balance of the fund at the same time to the Schneiders. In this proceeding, in which profits of the joint venture for distribution were determined, the court refused to allow Magidson to appear or to be heard. Magidson appeals from this judgment.

In his statement of points relied on appellant makes 45 assignments of error in the findings and rulings of the trial court, many of which are argued at length in the brief. But, in the view we take of the case, decision here turns primarily on the sufficiency of the evidence to establish the

alleged relation between Christopher Engineering Company, a Missouri corporation, Christopher Engineering and Manufacturing Company, a partnership, and National Aircraft Corporation, an Indiana corporation. On this question the District Court made the following findings of fact:

"4. Early in the administration of the debtor's estate this Court ruled that certain business activities being conducted as 'Christopher Engineering and Manufacturing Company' and 'Christopher Aircraft Company', ostensibly copartnerships registered in the names of certain managing officers of the debtor, were in fact mere divisions, agencies or departments wholly owned by the debtor, the Christopher Engineering Company, and pursuant to said ruling the plaintiff, as the reorganization Trustee of the debtor, has long since taken over and is collecting and administering all the assets of said agencies or departments as assets of the debtor. The Court, having again reviewed the facts in the light of the evidence offered in this case, confirms its former findings and again finds that the ostensible copartnerships were mere wholly owned divisions, agencies or departments of the Christopher Engineering Company, debtor.

"5. All the stock of the National Aircraft Corporation, subsidiary debtor, was acquired on behalf of the debtor in December, 1942, and it was long since ruled by this Court to be a wholly owned subsidiary of the Christopher Engineering Company, debtor, and that ruling reviewed in the light of the evidence in this proceeding is hereby confirmed, and the Court further finds that the National Aircraft Corporation 'Parts Division' and 'Hinge Horn Division' referred to in the evidence were mere agencies, divisions or departments of the National Aircraft Corporation.

"6. The Christopher Engineering Company, debtor, and its agencies and divisions aforesaid, together with various other agencies and divisions, reference to which is not pertinent to this inquiry, were in fact and to all intents and purposes one business entity and the National Aircraft Corporation, and its agencies and divisions, after the acquisition of its stock in December, 1942, were in fact wholly owned subsidiaries of the Christopher Engineering Company, debtor, and thereupon and thereafter the Christopher Engineering Company, its divisions, agencies and departments, and the National Aircraft Corporation, its divisions, agencies and departments, were operated in common by the officers of the debtor and became and were in fact to all intents and purposes one common business enterprise, * * *. * * *

"10. The Court finds that the defendant Phil Magidson well knew that the business of the principal and subsidiary debtors and their various departments and agencies, including the Christopher Engineering and Manufacturing Company, and the National Aircraft Corporation Small Parts Division and Hinge Horn Division, were to all intents and purposes one business, operated under the management and control of the officers of the Christopher Engineering Company and largely with the same staff of employees, of which the defendant was a part, * * *. * * * *"

■ The immediate question is whether the findings of the District Court are clearly erroneous. The findings of fact of a trial court are clearly erroneous within Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A., when (1) not supported by substantial evidence, (2) contrary to the clear preponderance of the evidence, or (3) based upon an erroneous view of the law. Aetna Life Insurance Co. v. Kepler, 8 Cir.,

116 F.2d 1, 5; Kasper v. Baron, 8 Cir., 207 F.2d 744, 748.

We turn to a consideration of the evidence on which the quoted findings are based.

The Christopher Engineering Company (hereinafter referred to as Christopher Engineering), was organized June 11, 1942, as a Missouri corporation with its principal place of business in St. Louis. Its stockholders were Joe Dubman, A. B. Christopher, and J. M. Brown.[1] It was authorized to engage in the business of engineering, designing, and planning for industrial organizations. It actually engaged in tool designing. It did not engage in manufacturing. On December 27, 1943, a petition for reorganization of Christopher Engineering under Chapter X of the Bankruptcy Act was filed in the United States District Court for the Eastern District of Missouri.[2] In January 1944 the charter of the Company was revoked by the State of Missouri.

Christopher Engineering and Manufacturing Company (hereinafter referred to as Christopher Manufacturing) was organized about October 1, 1942, by A. B. Christopher and J. M. Brown, stockholders and directors of Christopher Engineering, as a partnership engaged in St. Louis in the business of manufacturing jigs and fixtures for concerns engaged in manufacturing aircraft and gliders. It was not engaged in engineering or designing.

National Aircraft Corporation (hereinafter referred to as National) is an Indiana corporation with its principal place of business at Elwood, Indiana, where it had a plant. It was a dealer in parts and appliances used in the construction of airplanes and gliders, in particular an appliance referred to in the evidence as a hinge horn, a part used in the assembly of gliders by various corporations engaged in their manufacture for the Air Forces of the United States. In December 1942 A. B. Christopher and J. M. Brown acquired all of the stock of National.[3]

In June 1943 Joe Dubman, one of the stockholders of Christopher Engineering, filed an action in a Missouri state court against Christopher Engineering Company, A. B. Christopher, J. M. Brown and J. M. Brown, Trustee, and A. B. Christopher and J. M. Brown doing business as Christopher Aircraft Company, as Christopher Tooling Company, and Christopher Engineering and Manufacturing Company, in which Dubman charged Brown and Christopher with wrongfully diverting the funds of Christopher Engineering into other operations and businesses. Dubman asked for an accounting and for the appointment of a receiver for Christopher Engineering Company. All the defendants in that action, in response to an order to show cause filed on June 24, 1943, alleged that Christopher Engineering was a corporation organized to engage solely in designing tools and equipment; that shortly

---

1. In the trial of this action neither Dubman nor Christopher appeared. Brown was present at the trial, but did not testify, although facts in dispute were within his knowledge. The reason for Brown's conduct is made apparent later in this opinion.

2. This reorganization proceeding, which has been in progress for more than ten years, seems to have resulted chiefly in widespread and prolonged litigation. See State ex rel. Duggan v. Kirkwood, 357 Mo. 325, 208 S.W.2d 257, 2 A.L.R.2d 216; In re National Aircraft Corporation (Duggan v. Sansberry) 7 Cir., 149 F.2d 548; Duggan v. Sansberry, 327 U.S. 499, 66 S.Ct. 657, 90 L.Ed. 809; Oglesby &

Simpson Supply Co. v. Duggan, 8 Cir., 174 F.2d 904; Magidson v. Duggan, 8 Cir., 180 F.2d 473; United States v. Duggan, 8 Cir., 210 F.2d 926. The complaint in this action was filed March 17, 1949. Final judgments were entered March 4, 1952, and July 16, 1952.

3. Apparently National maintained a parts division and a hinge horn division referred to in the court's findings. The court's findings also referred to Christopher Aircraft Company, which was a partnership composed of A. B. Christopher and J. M. Brown. Neither its business nor the extent of its operations appears from the printed record on appeal.

after Christopher Engineering began business, it appeared that the business of designing would stop unless the corporation could arrange to build the designs which it created; that A. B. Christopher secured a contract to design and manufacture jigs and fixtures for National; that Dubman opposed the extension of the corporation's business to manufacturing; that therefore the individual defendants, Christopher and Brown, not being bound to the corporation by any contract for their exclusive services and with the consent of Dubman, undertook to engage in the manufacturing business on their own behalf and at their own financial risk. In this return the defendants further asserted that they were not obligated to refrain from competing with Christopher Engineering; that in fact they never competed with it but turned over to it all of the design work incidental to the manufacturing operations undertaken by them. This return was signed by George O. Durham as counsel for all defendants—in the instant case counsel for the trustee Duggan—and was sworn to by J. M. Brown.

The same defendants in an answer filed in the State court action on October 4, 1943, in which they were again represented by George O. Durham and B. Sherman Landau, as attorneys,—both appearing in the instant case as counsel for Duggan—denied that Christopher Engineering or Dubman, as one of its stockholders, had any right, legal or equitable, in the capital or earnings of any of the manufacturing operations carried on by Christopher and Brown with the knowledge of Dubman and "at their own risk and expense" and "in their own names and trade-names adopted by them in accordance with the law of the State of Missouri." In this State court proceeding a decree in favor of Dubman was entered on December 17, 1943, appointing the appellee here, Jerome F. Duggan, receiver of Christopher Engineering and requiring the defendants to account to Dubman.

On December 27, 1943, Christopher Engineering filed its petition for reor-

ganization in the United States District Court for the Eastern District of Missouri. The petition was signed and sworn to on behalf of the corporation by A. B. Christopher, President. Noah Weinstein, George O. Durham and B. Sherman Landau were the attorneys for the petitioner. No capital stock of National was listed as an asset of the petitioner. The petition stated that the assets consisted of a claim against National for about $55,000 and a claim against Christopher Manufacturing for $40,000, and that the value of the total assets amounted to about $100,000, and liabilities to about $89,000. A balance sheet attached to the petition showed the capital stock of the petitioner to be $10,000, and that, aside from a bank overdraft of $267.18 and accrued taxes of $339.80, total indebtedness consisted of $88,681.11 owed Christopher and Brown either as individuals or as partners in Christopher Manufacturing. It therefore appears that on December 27, 1943, no claim was being made that Christopher Engineering owned any part of National.

The District Court approved the petition of Christopher Engineering for reorganization on the day it was filed, appointed Duggan trustee, enjoined further proceedings in the State Court in the case of Dubman v. Christopher Engineering Company, et al., and enjoined Duggan, as receiver appointed by the State Court, from interfering with the property of the debtor in the hands of Duggan, as trustee appointed by the Federal District Court in the reorganization proceeding.

On January 18, 1944, the reorganization court entered an order requiring Christopher, Brown and Landau to turn over to Duggan, trustee, the shares of capital stock of National held by them. The order contained the following provision:

"It is Further Ordered, Adjudged and Decreed that A. B. Christopher, J. M. Brown or B. Sherman Landau, or any other person, firm, or corporation may file a claim for all or any

part of said stock as owner, or to assert any interest or lien against said stock hereinbefore mentioned, by February 25th, 1944, next, which claim or lien shall not be affected by the delivery of possession to the Trustee under this Order."

The stock of National was delivered to the trustee, and on February 25, 1944, Brown and Christopher filed claims for its return. In Brown's claim, which was sworn to by him, he stated that he was "the sole and absolute owner" and entitled to the immediate possession of 288½ shares of the capital stock of National, subject to a lien of B. Sherman Landau in the principal sum of $6,000. Brown asked the court to direct the trustee to deliver to Brown the shares of stock. The claim of Christopher, filed on the same date, stated that he was the owner and entitled to the possession of the other 288½ shares of the outstanding capital stock of National that he had turned over to the trustee, and he asked for its return. Christopher swore to the truth of this claim. Landau, on the same date, also filed a verified claim, asserting that he had a $6,000 lien on the 288½ shares of the capital stock of National belonging to Brown.

Duggan, trustee, after receiving the capital stock of National, took over the assets of Christopher Manufacturing, and on February 25, 1944, Christopher and Brown filed a petition for the return of these assets. In their petition they asserted that they had formerly engaged in business as partners under the names of "Christopher Engineering and Manufacturing Company", "Christopher Aircraft Company", and "Christopher Tooling Company"; that on January 20, 1944, they had been directed by the reorganization court to turn over to the trustee Duggan the assets of these partnerships, subject to the further orders of the court and without prejudice to their filing a claim for the assets on or before February 25, 1944; that they complied with the order of the court and turned the assets over to the trustee, and that they are entitled to immediate possession of these assets. They asked that they be found to be the sole owners of the assets and entitled to their immediate possession, and that Duggan, trustee, be directed to deliver the assets to them.

National was adjudicated a bankrupt on February 7, 1944, upon an involuntary petition filed January 21, 1944, in the United States District Court for the Southern District of Indiana. That court appointed as receiver James C. Sansberry, who was subsequently elected trustee in bankruptcy. On April 6, 1944, the Referee in Bankruptcy ordered that a public sale of assets of National be held on April 20, 1944.

The first meeting of creditors of National was held on March 7, 1944, at Indianapolis, Indiana. Brown testified at that meeting. A narrative statement of his testimony, so far as pertinent, appears in the record filed in this Court in the case of Oglesby & Simpson Supply Co. v. Duggan, 8 Cir., 174 F.2d 904. The statement reads as follows:

"Joseph M. Brown, being duly sworn, testified that he was a director, and Secretary and Treasurer of the National Aircraft Corporation, an Indiana corporation with its principal place of business at Elwood, Indiana; that the business of the corporation had been the manufacture of aircraft parts and gliders; that it owned real estate acquired in late 1941 or early 1942.

"That the corporation owned an old brick factory building, somewhere between forty and sixty years of age, for which the corporation paid between $10,000.00 and $12,000.00; that all of the stock of the National Aircraft Corporation had been purchased by Brown and by A. B. Christopher, each one owning 50% thereof; that the Articles of Agreement of the corporation provided for 500 shares but that 587 shares had been issued, and that this stock had been turned over to Mr. Duggan (Jerome F. Duggan), trustee of the Christopher Engineering Corporation, under court order.

"That litigation respecting the ownership of the stock had not yet been determined, that the Christopher Engineering Corporation was the subject of a separate bankruptcy proceeding pending in the Eastern District of Missouri.

"That the National Aircraft Corporation had one prime contract with the Government for building gliders, entered into in February, 1942; that the Government terminated that contract about February 20, 1943, approximately one month and twenty days after Messrs. Christopher and Brown acquired the stock of the corporation; that one glider had been delivered to the United States and that four others would have been delivered had it not been for cancellation.

"That Brown would not care to go on record as to how much money the Government had spent, but that the National Aircraft Corporation was indebted to the Government by reason of a certain revolving fund to the extent of $152,000.00 out of an original fund of $240,000.00.

"That as to the entire liabilities of the bankrupt, the figure '$429,000.00 would be pretty accurate,' that he would not care to estimate the reasonable value of the assets, that 'it looks to me like it (National Aircraft Corporation) is insolvent, but I would not care to express myself.'

"On further examination Joseph M. Brown testified that his stock was pledged with a Mr. Landau (B. Sherman Landau) as collateral for a loan, and that Brown knew of no reason why the stock in his name and in Christopher's name should be regarded as the property of the Christopher Engineering Company; that he and Christopher had paid $30,000.00 cash for the stock."

On April 19, 1944, Brown, as Secretary of National, filed a verified petition, ostensibly in its behalf, in the reorganization proceedings of Christopher Engineering, then pending in Missouri. The petition alleged that the majority of the voting capital stock of National "is owned directly by the debtor [Christopher Engineering] or indirectly through nominees," and that "This subsidiary corporation is unable to meet its debts as they mature, and it desires to effect a plan of reorganization in connection with the plan of corporate reorganization of the debtor." National, the so-called "subsidiary", prayed for the approval of its petition and for an order restraining Sansberry, the Indiana trustee in bankruptcy, from taking any steps affecting the assets of the "subsidiary", and directing him to turn them over to National or to a trustee to be appointed by the reorganization court. In the petition, the liabilities of National were stated to be about $90,000 and its assets to be about $150,000.

On the filing of the petition and "after hearing attorneys for said subsidiary corporation in favor of said petition," but, so far as this record shows, without evidence or notice to anyone and without extending to the bankruptcy court in Indiana the courtesy of requesting a postponement of the sale set for April 20, 1944, in order to afford the reorganization court in Missouri a reasonable opportunity to consider upon the merits National's petition for reorganization, the Missouri court, on April 19, 1944, granted the petition, found that National was a wholly owned subsidiary of Christopher Engineering, appointed Duggan trustee, enjoined all further proceedings in the Court of Bankruptcy in Indiana, and ordered Sansberry, the Indiana trustee, to deliver the assets of the bankrupt to Duggan. Copies of the order of injunction issued by the Federal Court of Missouri were served upon Sansberry and the auctioneer immediately preceding the sale of National's assets under the order of the Bankruptcy Court in Indiana.

Instead of postponing the sale and seeking the vacation of the order of injunction in the reorganization court in Missouri, Sansberry carried out the or-

der of the Bankruptcy Court in Indiana and consummated the sale. This resulted in the jurisdictional controversy which is described and decided in Duggan v. Sansberry, 327 U.S. 499, 66 S.Ct. 657. The Circuit Court of Appeals for the Seventh Circuit, in that controversy, In re National Aircraft Corporation (Duggan v. Sansberry), 149 F.2d 548, had held, in substance, that the Missouri Court had not obtained jurisdiction over National, because (1) National had not been shown to be a subsidiary of Christopher Engineering, (2) National had been adjudicated a bankrupt in Indiana and its assets had been transferred to a trustee, and (3) the petition of National for reorganization filed in Missouri did not show that Brown had been authorized to file it. The United States Supreme Court ruled, in effect, that regardless of whether the petition of National in the reorganization proceeding in Missouri had been properly or improperly filed and approved, the order of the Missouri Court was not subject to collateral attack in the bankruptcy proceedings in Indiana, because of § 513, Title 11 U.S.C.A., which authorized the granting, pending approval or dismissal of a petition for reorganization of a debtor corporation, of a temporary stay of a prior bankruptcy proceeding.

The jurisdictional controversy between Duggan, trustee, and Sansberry, trustee, was decided by the Supreme Court March 4, 1946. 327 U.S. 499, 66 S.Ct. 657. On April 19, 1947, a number of the general creditors of National filed a petition in the Missouri reorganization proceeding for the dismissal of those proceedings in so far as they affected National as a so-called subsidiary of Christopher Engineering, and for a direction that the interrupted bankruptcy proceedings in Indiana be proceeded with. The grounds upon which the petition was based are stated in the opinion of this Court in Oglesby & Simpson Supply Co. v. Duggan, 8 Cir., 174 F.2d 904, 906.

The petition of the creditors showed that, while Brown in his verified petition for reorganization filed on behalf of National on April 19, 1944, had stated that its liabilities amounted to $90,000 and its assets to $150,000—and on March 7, 1944, had testified that its liabilities were about $429,000 and its assets $156,-569.49—the report of the Indiana Referee in Bankruptcy showed general claims of $386,015.74 and the total amount of all claims to be $2,430,094.61, and that the books of National showed assets of about $110,000. In the Oglesby & Simpson Supply Co. case, 174 F.2d 904, the testimony of Duggan, taken on April 23, 1948, was that he did not know when Christopher Engineering ceased business, but that it had not operated as a going concern since he took charge; that, so far as he knew, its business was designing aircraft for the War Department; that he understood that the business of National was making planes; that he did not think that Christopher Engineering could go back in the aircraft business; that he did not know about National; that he had prepared no plans for the reorganization of either debtor; that he had about $500 in cash in the Christopher Engineering estate together with some machinery "ranging anywhere from $1500 to $3500" in value; that he had claims that were then "in the process of trying to be collected aggregating * * * in the neighborhood of $125,000"; that during the last several years he had had disbursements but no receipts from Christopher Engineering; that he had about $30,000 in National funds, a lease bringing in around $13,000 or $14,000 a year from property appraised by him at $200,000, and claims "in the process of collection aggregating possibly another $200,000."

On September 30, 1948, the reorganization court, without opinion, denied the petition of the creditors of National for the dismissal of the petition for its reorganization and for a direction that National be liquidated as a bankrupt in Indiana. The creditors appealed. In an opinion filed June 6, 1949, this Court held, in effect, Oglesby & Simpson Supply Co. v. Duggan, 8 Cir., 174 F.2d 904, that it was never intended that hopeless-

ly insolvent corporations might invoke the provisions of Chapter X of the Bankruptcy Act; that it was apparent that National at the time of the filing of its petition for reorganization was hopelessly insolvent; that there was nothing in the record to indicate any reasonable hope or possibility of reorganization, but that the Missouri District Court had acquired jurisdiction of National and "if that estate is to be liquidated we may assume that the court, if and when it becomes satisfied that reorganization is not feasible, will direct the estate to be liquidated, not in the Indiana court but in the Missouri court." This Court also said in that case at page 907 of 174 F.2d:

"* * * The preferred claims far exceed the value of the assets and hence appellants could profit nothing by the granting of their motion. The entire estate will be absorbed in the payment of the costs of administration and of the preferred claims. It can therefore be no concern of appellants whether the estate be administered in the Missouri court or in the Indiana court as the proof shows conclusively that they cannot in any event recover anything on their general claims. In these circumstances we think it was within the discretion of the trial court to deny their motion because they had no interest in the subject matter and no possibility of recovering anything out of the estate.

"Whether those holding preferred claims might seek liquidation of the estate we are not called upon to decide. * * *"

This Court, in effect, sustained the contentions of the creditors of National that liquidation was in order, but held that they had not sufficient interest in the assets of National to compel the District Court to dismiss the reorganization proceedings or to adjudicate National a bankrupt.

The testimony of Duggan in the instant case with respect to the conduct of Brown and Christopher is illuminating.

Duggan testified that they were claiming that Christopher Aircraft and Christopher Manufacturing were partnerships and that they (Brown and Christopher) were the sole and absolute owners of the assets of these partnerships as well as of the stock of National. Duggan stated that there was an effort in the federal court in Indianapolis to acquire the assets of National and that, "in an endeavor to preserve the assets of all these various firms in one court, they [Brown, Christopher and Landau] did agree and cooperate and turn over their stock in accordance with the prior order, and subject to subsequent litigation, and as a result of that the trustee of the court [Duggan] along with counsel representing the trustee now * * * were enabled to secure all of the assets of National Aircraft from the trustee appointed by the federal court in Indianapolis."

The claims of Christopher and Brown for the return of their National stock and the assets of the partnerships are still pending and undecided in the reorganization proceedings.

■ There was, in our opinion, no adequate evidentiary basis for the findings of the District Court that National was ever a subsidiary of Christopher Engineering or that these corporations and the partnerships of Brown and Christopher were to all intents and purposes a single entity or enterprise. These findings, we think, are clearly erroneous. Magidson never had any contractual or fiduciary relationship with National which alone of these various concerns had had to do with dealing in "hinge horns", comparatively simple and inexpensive hinge devices which were in demand by those who had contracts with the Government for the manufacture of gliders. Therefore, it is not possible that his share of the earnings of the joint enterprise from the production and sale of hinge horns and a certain type of bolt belongs, either in law or equity, to Duggan as trustee. The estates of the debtor corporations were deprived of nothing by Magidson's activities as a

joint venturer that they were entitled to or could have obtained if he had never engaged in the joint enterprise with the Schneiders. It seems apparent that National received its death blow March 1, 1943, when the Government terminated its contract and withdrew financial support. Christopher Engineering, with which Magidson had a terminable employment contract which created a confidential and fiduciary relationship with respect to the designing of tools and equipment, manufactured nothing and succumbed as a going concern during the course of the Dubman litigation in the State Court in the summer and fall of 1943 and while the joint enterprise had hardly gotten under way.

 Counsel for Duggan argue that, since Magidson gave false testimony at the trial, Duggan was relieved of his burden of proving, by clear and convincing evidence, the existence of the constructive trust upon which Duggan's claim was based. What occurred was this. Magidson offered in evidence what purported to be a carbon copy of a letter of resignation dated June 15, 1943, addressed to "Christopher Engineering Co., St. Louis, Mo., Att. Brown, Christopher & Katz." Magidson's testimony that it was a carbon copy made at the time the original letter was typed was false. Whether it was false testimony as to a material fact may be doubted, since Katz, the bookkeeper and auditor for Christopher Engineering and Christopher Manufacturing, who was called as a witness by Duggan, testified that Brown showed him such a letter and ordered him to stop payment on a July 16, 1943, check of Christopher Manufacturing payable to Magidson, and since Brown, who was present at the trial, was not called to refute the testimony of Katz and Magidson that the latter had sent in a letter of resignation. Moreover there is no dispute about the fact that after July 10, 1943, the date Magidson's letter stated that his resignation was to become effective, he was no longer on the payroll of Christopher Manufacturing or of Christopher Engineering.

A ruling that the giving of false testimony by Magidson was the equivalent of clear, convincing and trustworthy proof that he was a constructive trustee, Pratt v. Shell Petroleum Corporation, 10 Cir., 100 F.2d 833, 837, and was obliged to deliver his share of the earnings of the joint venture to Duggan, trustee, would be absurd. Disregard of Magidson's testimony could not prove Duggan's case. Cf. Bunt v. Sierra Butte Gold Mining Co., 138 U.S. 483, 485, 11 S.Ct. 464, 34 L.Ed. 1031; Moore v. Chesapeake & Ohio Railway Co., 340 U.S. 573, 576, 71 S.Ct. 428, 95 L.Ed. 547; Ellis v. United States, 8 Cir., 138 F.2d 612. It is, of course, elementary that the testimony of a witness who willfully testifies falsely may be disregarded unless corroborated by credible evidence—but the giving of such false testimony is substantive proof of nothing.

 A constructive trust is a fiction imposed as an equitable device for achieving justice, Healy v. Commissioner of Internal Revenue, 345 U.S. 278, 282, 73 S.Ct. 671, 97 L.Ed. 1007; 3 Scott on Trusts, § 462.1; 3 Bogert, Trusts and Trustees, § 471, and not for the purpose of doing an injustice. The elements of a claim to enforce a constructive trust are (1) a fiduciary relationship, and (2) the use by the fiduciary of knowledge or interest acquired through the relationship in frustration of its purpose. Young v. Bradley, 6 Cir., 142 F.2d 658, 661; Trice v. Comstock, 8 Cir., 121 F. 620, 623. Perhaps another way of saying the same thing is that one in a position of trust who does for himself what he is obligated to do for his beneficiary, may not retain the fruits of his dereliction. See Marshall v. Lovell, D.C.Minn., 11 F.2d 632, 639, affirmed 8 Cir., 19 F.2d 751, certiorari denied 276 U.S. 616, 48 S.Ct. 207, 72 L.Ed. 733; Johnson v. Umsted, 8 Cir., 64 F.2d 316, 320–321; United States v. Carter, 217 U.S. 286, 305–309, 30 S.Ct. 515, 54 L.Ed. 769. But the private and personal activities of a fiduciary are not limited unless they relate directly to those of his principal, Young v. Bradley, supra, 142 F.2d 658, 661, and the fiduci-

ary need not account to his principal or employer for an outside profit derived from an independent business not connected with the employer's business. Eagle Indemnity Co. v. Cherry, 5 Cir., 182 F.2d 298, 300; Latta v. Kilbourn, 150 U.S. 524, 549–550, 14 S.Ct. 201, 37 L.Ed. 1169.

Since Magidson bore no fiduciary relationship to National and since the activities in which the joint venture was engaged did not interfere with or frustrate the relationship he bore to any of these doomed enterprises created or acquired by Christopher and Brown, he owes Duggan, trustee, nothing.

■ The history of these reorganization proceedings, out of which so much litigation has arisen, has been stated in greater detail than is necessary to present the questions under review. This has been done in part for the purpose of illustrating the unfortunate results which flow from drawing into reorganization proceedings under Chapter X of the Bankruptcy Act corporations which should be liquidated, and of unnecessarily interfering with proceedings in a state court and with prior bankruptcy proceedings in other jurisdictions. See Fidelity Assurance Association v. Sims, 318 U.S. 608, 621, 63 S.Ct. 807, 87 L.Ed. 1032; Marine Harbor Properties, Inc. v. Manufacturers Trust Co., 317 U.S. 78, 63 S.Ct. 93, 87 L.Ed. 64; Chicago Title & Trust Co. v. Forty-One Thirty-Six Wilcox Building Corp., 302 U.S. 120, 133, 58 S.Ct. 125, 82 L.Ed. 147. If the reorganization of a debtor corporation is not feasible, the proceedings should be promptly terminated. Tennessee Publishing Co. v. American National Bank, 299 U.S. 18, 22, 57 S.Ct. 85, 81 L.Ed. 13;

Sylvan Beach, Inc. v. Koch, 8 Cir., 140 F.2d 852, 860; Price v. Spokane Silver & Lead Co., 8 Cir., 97 F.2d 237, 246, certiorari denied 305 U.S. 626, 59 S.Ct. 88, 83 L.Ed. 401; First National Bank of Wellston v. Conway Road Estates Co., 8 Cir., 94 F.2d 736, 739.

■ Section 636 of Title 11 U.S.C.A. furnishes the means for terminating reorganization proceedings of debtor corporations the reorganization of which is not feasible. Sylvan Beach, Inc. v. Koch, supra, at page 862 of 140 F.2d. Nearly five years have passed since this Court decided the Oglesby & Simpson Supply Co. case, in which the Court said at page 907 of 174 F.2d: "Whether those holding preferred claims might seek liquidation of the estate [of National] we are not called upon to decide." While we are still not required to rule upon the question of terminating these reorganization proceedings, we have no hesitation in saying that the preferred creditors of National and any of the creditors of Christopher Engineering can and should seek the liquidation in bankruptcy of these estates or a dismissal of the reorganization proceedings. It is to be hoped that the reorganization court, of its own motion, will bring about a termination of the proceedings for the reorganization of the debtors.

The judgments appealed from are reversed, with directions (1) to dismiss this case with prejudice, (2) to cause to be refunded to the State Court the entire fund taken from its custody, and (3) to permit no further interference by Duggan, trustee, with the State court proceedings to which the Schneiders and Magidson are parties.